AMERICAN STATES INSURANCE COMPANY and Badger State Mutual Insurance Company, Plaintiffs,

v.

ESTATE OF Mark TOLLARI, Patricia Tollari, Administrator, and United Fire & Casualty Company, Defendants.

ESTATE OF Mark TOLLARI, Patricia Tollari, Administrator, Cross-Claim Appellant,

v.

UNITED FIRE & CASUALTY COMPANY, Cross-Claim Appellee.

No. 83–1630.

Supreme Court of Iowa.

Feb. 13, 1985.

Rehearing Denied March 15, 1985.

James E. Van Werden and Randy V. Hefner of Van Werden, Hulse & Hefner, Adel, for appellant.

Ross H. Sidney and Brian L. Campbell of Grefe & Sidney, Des Moines, for appellee.

UHLENHOPP, Justice.

The determinative issue in this appeal is whether the district court erred in its construction of "underinsured" in section 516A.1 of the Iowa Code of 1981.

Most of the facts which give rise to the issue are uncontroverted. Randy Schuldt was driving a car near Van Wert, Iowa. An accident occurred, and Schuldt and his five passengers including Mark Tollari were killed. The accident occurred in such way that the Schuldt estate is liable to the Tollari estate in damages for Tollari's death.

At the time of the accident the car was covered by three liability insurance policies with total limits of $120,000. That amount was divided among the estates of the five passengers; each received $24,000 (plus $500 interest). No dispute exists as to that division. No further recoveries were made by the Tollari estate.

At the time of the accident Tollari was a "covered person" under still another insurance policy, this one issued by United Fire & Casualty Company (United). The policy contained underinsured motorist coverage to a limit of $50,000.

Other insurers brought the present interpleader action; the interpleader itself is not involved in this appeal. In that action the Tollari estate cross-claimed against United seeking to recover $50,000 under the underinsured clause. United denied liability and moved for summary judgment. The district court granted the motion, and the Tollari estate appealed.

As we understand, United's position is that its policy provided $50,000 of underinsured motorist coverage but the Schuldt car had $120,000 of liability coverage in effect at the time. Since the Schuldt car was insured in excess of United's underinsured coverage, that car was not "underinsured".

To state the position of the Tollari estate we will assume, solely for the purpose of explanation, that the Tollari estate was damaged $100,000 by reason of Tollari's death. The Tollari estate then contends that it is entitled to recover $100,000 from United less $24,000 which the estate received from Schuldt's liability insurance, or $76,000, subject to the limit of $50,000 of underinsured coverage in United's policy.

▮ I. We turn first to the Iowa statute on this subject. United cites clauses in its policy, but an Iowa statute provides for uninsured and underinsured coverage, Iowa Code § 516A.1 (1981), and the law writes insurance statutes into policies. *Benzer v. Iowa Mutual Tornado Insurance Ass'n*, 216 N.W.2d 385, 388 (Iowa 1974) ("A statute applicable to a contract of insurance enters into and forms a part thereof in the same manner as if it had been actually written or copied therein and in construing the terms of the policy, the statute is to be read in connection therewith, in the light of the purpose and intent of the statute."); 43 Am.Jur.2d *Insurance* § 302 (1982); 44 C.J.S. *Insurance* § 302 (1945) ("A statute applicable to a contract of insurance in force at the time of the making of the contract enters into and forms a part thereof, must be read in connection therewith in construing the terms of the policy, and controls in case of conflict, notwithstanding its subsequent amendment or repeal."). The question here is the meaning of "underinsured" in the statute, and this court is the final arbiter in the construction of Iowa statutes. *Hubbard v. State*, 163 N.W.2d 904 (Iowa 1969).

Previously our statute dealt only with uninsured (and hit-and-run) motorists. Iowa Code § 516A.1 (1979). This court had held that an "uninsured" motorist clause did not cover the situation of an "underinsured" motorist. *Detrick v. Aetna Casualty & Surety Co.*, 261 Iowa 1246, 1253, 158 N.W.2d 99, 105 (1968) (" 'Underinsurance' means 'insurance in an amount insufficient to cover the possible loss or to satisfy the requirements of a co-insurance clause. . . .' We find no authority authorizing us to define the word 'uninsured' to mean underinsured in relation to plaintiff's injury."). Subsequently the General Assembly amended section 516A.1 to add "underinsured". At the time of this accident the first paragraph of section 516A.1 read:

No automobile liability or motor vehicle liability insurance policy insuring against liability for bodily injury or death arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in· this state with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided in such policy or supplemental thereto, for the protection of persons insured under such policy who are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or a hit-and-run motor vehicle or an underinsured motor vehicle because of bodily injury, sickness, or disease, including death resulting therefrom, caused by accident and arising out of the ownership, maintenance, or use of such uninsured or underinsured motor vehicle, or arising out of physical contact of such hit-and-run motor vehicle with the person insured or with a motor vehicle which the person insured is occupying at the time of the accident. Both the uninsured motor vehicle or hit-and-run motor vehicle coverage, and the underinsured motor vehicle coverage shall include limits for bodily injury or death at least equal to those stated in section 321A.1, subsection 10. The form and provisions of such coverage shall be examined and approved by the commissioner of insurance.

(Section 321A.1(10), referred to in the quotation, prescribes minimum liability coverage for certain drivers for whom insurance is mandatory: $10,000 per person and $20,000 per accident at the time of these events. The second paragraph of section 516A.1 permitted a motorist to reject uninsured or underinsured coverage by executing a separate document.)

II. We believe the present case is controlled by two principles. In ascertaining the amount that a tortfeasor's car is underinsured, we think the General Assembly intended to include only the amount of the tortfeasor's liability insurance which is available to the victim who has underinsurance coverage, in this case, $24,000. The remaining $96,000 of liability insurance on the Schuldt car is illusory so far as the Tollari estate is concerned; the estate has no way of obtaining any of it.

Second, we believe the General Assembly contemplated that a buyer of underinsurance coverage is entitled to recover on that clause for the amount of his loss that the tortfeasor's liability insurance does not reach, subject to the limit of the underinsurance clause. *Detrick*, at 1253, 158 N.W.2d at 105 (" 'Underinsurance' means 'insurance in an amount insufficient to cover possible *loss*' ". (Emphasis added.)). In this case the applicable figures are $100,000 of loss (assumed), less $24,000 of liability insurance available, or $76,000, subject to a limit of $50,000. Any other interpretation of underinsurance would mean the victim cannot recover part of the underinsurance limit he has bought and paid for, and that portion of the limits also would be illusory. For example, if the Tollari estate had to deduct $24,000 of liability insurance received from its underinsurance limits of $50,000, the estate would recover only $26,000 of underinsured coverage and the remaining $24,000 of underinsurance that was purchased would be unavailable to the estate—notwithstanding a *loss* of $100,000.

The following decisions, although distinguishable, lend support to our rationale: *Williams v. Hartford Accident & Indemnity Co.*, 382 So.2d 1216 (Fla.1980); *Whitten v. Empire Fire & Marine Insurance Co.*, 353 So.2d 1071 (La.App.1977); *Holman v. All Nation Insurance Co.*, 288 N.W.2d 244 (Minn.1980); and *United Services Automobile Ass'n v. Winbeck*, 30 Wash.App. 769, 637 P.2d 996 (1981).

III. The result of this construction of section 516A.1 of the Code is that uninsured and underinsurance coverages are complementary, as we think the General Assembly intended them to be. They protect against essentially one peril: loss caused by a tortfeasor who is not financially responsible. In the one case the tortfeasor has no liability insurance at all to pay the loss, and in the other he has insufficient liability insurance to pay the loss. If the tortfeasor has no liability insurance the injured plaintiff can, under his own uninsured motorist coverage, recover his loss from the tort, *subject to the limit of that uninsured coverage*—assuming no duplication of benefits exists. *McClure v. Employers Mutual Casualty Co.*, 238 N.W.2d 321 (Iowa 1976). Correspondingly, if the tortfeasor has some liability insurance but insufficient to pay the loss fully, the plaintiff can, under his own underinsured motorist coverage, recover his loss from the tort less the tortfeasor's available liability insurance proceeds, *subject to the limit of that underinsured coverage* —again assuming no duplication of benefits exists.

We thus hold that United is liable to the Tollari estate for the estate's damages from Tollari's death less $24,000, subject to the limit of $50,000.

We remand the case to district court for a substituted partial summary judgment in conformity with this opinion and for further proceedings on the issue of the amount of damages of the Tollari estate arising from Tollari's death.

REVERSED AND REMANDED.

All Justices concur except WOLLE, SCHULTZ, and CARTER, JJ., who dissent.

WOLLE, Justice (dissenting).

The majority hinges its reversal of the trial court on what it finds to be the legislative intent of Iowa Code chapter 516A (1983). That statute originally required insurers of motor vehicles to provide protection for their insureds who are "legally entitled to recover damages from the owner or operator of an uninsured motor vehi-

cle or a hit-and-run motor vehicle." In 1980 the statute was amended by adding the words "underinsured motor vehicle" to the description of the required coverage. *See* 1980 Iowa Acts ch. 1106 §§ 6, 7 (West). The majority finds in that statute as amended the intent to require insurers to provide quite expansive underinsurance—basically floating coverage which picks up and pays the difference between an insured person's loss and the tortfeasor's liability insurance coverage, subject only to the maximum limit of the underinsured vehicle coverage. The majority also finds an intent to disallow or at least severely restrict the insurer's attempt to avoid duplication of insurance or other benefits. I agree that the law writes this type of statute into insurance policies, but I do not find in chapter 516A an intent to nullify the effect of any of the provisions of United's policy. To the contrary, I believe that the wording of the statute as amended is consistent with each pertinent provision of United's policy. What the legislature said, not what it should or might have said, should be our primary guide to ascertaining legislative intent. Iowa R.App.P. 14(f)(13).

I. The insurance policy defines underinsured motor vehicle as follows:

"Underinsured Motor Vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

Under that definition underinsured vehicle coverage applies only to the extent that limits of liability insurance applicable to the operation of a tortfeasor's vehicle are less than the applicable underinsured vehicle limit or limits. In other words, the amount of *under*insured vehicle coverage is the amount by which the liability coverage applicable to the tortfeasor's vehicle is *under* the applicable underinsured policy limit.

The majority accepts the Tollari estate's argument that section 516A requires a much different measurement of underinsurance coverage, consequently a much dif-ferent definition in the policy. The majority reads the statute to require that the comparison be made between the liability coverage "available to the victim" and "his loss that the tortfeasor's liability insurance does not reach, subject to the limit of the underinsurance clause." That comparison certainly would expand the scope of coverage far beyond the policy definition, because it focuses not on the liability insurance of the "underinsured" vehicle but rather on two new factors: (1) the amount other injured persons may receive out of the liability insurance which would reduce the "available" liability insurance; and (2) the total amount of the insured's damages, which may far exceed even hefty liability limits on the tortfeasor vehicle. I believe the majority opinion really defines not the words "underinsured motor vehicle" used in the statute and United's policy but a different concept—inadequate recovery by an insured. Neither expressly nor by fair implication does chapter 516A suggest that such a definition or such a comparison is required.

Contrary to the majority, I believe the only comparison suggested by the statute for determining what is an "underinsured motor vehicle" is the comparison provided in United's policy—a comparison of the limits of coverage purchased by the insured against the actual liability limits covering operation of the tortfeasor's vehicle. Section 516A.1 specifically provides that this coverage "shall include limits for bodily injury or death at least equal to those stated in section 321A.1(10)." The reference is to the statute which provides the minimum limits of automobile insurance required for drivers for whom insurance is mandatory. It should be noted that the amendment to chapter 516A which first required that underinsured vehicle insurance be offered was simply part of the legislative Act which increased the minimum limits of liability coverage under Iowa Code chapter 321A. The Act was entitled "automobile liability insurance." 1980 Iowa Acts ch. 1106 (West). This lends support to United's contention that the legislative intent in requiring coverage was mere-

ly to assure Iowa citizens that if an insured tortfeasor's vehicle had lower coverage limits than required by section 321A.1(10), the insured's policy covering damages caused by such an "underinsured motor vehicle" would make up the difference.

I think the majority opinion gives undue weight to the dictum in *Detrick v. Aetna Casualty and Surety Co.*, 261 Iowa 1246, 1253, 158 N.W.2d 99, 104 (1968), in which a dictionary definition of "underinsurance" is quoted. The reference to "coinsurance" in that dictionary definition suggests that it was describing an entirely different kind of insurance than the underinsured vehicle coverage which section 516A now mandates. The *Detrick* case was decided long before the legislature inserted the phrase "underinsured motor vehicle" in chapter 516A. It is perhaps noteworthy, moreover, that when our court in *Detrick* explained the word "underinsured" rather than "underinsurance", it did so with specific reference to Iowa Code section 321A.1(10), saying:

> [The operator of the tortfeasor's vehicle] was not uninsured *nor underinsured within the requirements of the statute.* We find no authority authorizing us to define the word "uninsured" to mean *underinsured in relation to plaintiff's injury.*

*Id.* (emphasis added).

Iowa Code section 516A.1 also provides:

> The form and provisions of such coverage shall be examined and approved by the commissioner of insurance.

I believe the trial court correctly relied on a 1980 declaratory ruling issued by the insurance commissioner to several Iowa insurers. That ruling is significant both in what the commissioner did require for compliance and what the commissioner did not require. Asked to interpret the new underinsured motor vehicle coverage, the commissioner decided that insurers should provide higher coverage limits for that insurance than the minimum coverage required for basic automobile liability insurance under Iowa Code section 321A.1(10). The commissioner thus insisted that insureds receive some protection even when the tortfeasor's vehicle carried the minimum liability coverage required by that Iowa statute. More importantly, the commissioner did not require insurers to include in their policies a definition of "underinsured motor vehicle" any different than that used in United's policy, even though the legislature clearly and specifically had left to the commissioner the responsibility to select and define provisions fixing the parameters of this new coverage. The sound legislative purpose for leaving specific forms and provisions of coverage in the hands of the commissioner of insurance is to provide insurers advance notice of the risk they must undertake and the premium that may fairly be charged for that risk. The majority's expansive reading of chapter 516A unfairly penalizes United, requiring it retrospectively to cover a risk which was not written into its policy, which the insurance commissioner did not require be written into its policy, and which, I suggest, a reasonable reading of chapter 516A would not require.

Of the cases from other jurisdictions which are relied upon by the parties, I believe two well-reasoned Minnesota cases are most instructive because they construed a statute similar to Iowa Code chapter 516A. In *Lick v. Dairyland Insurance Co.*, 258 N.W.2d 791 (Minn.1977), a case the trial court relied upon, the Minnesota court rejected arguments similar to those made by the Tollari estate in this case concerning the meaning and scope of underinsured vehicle coverage required by statute. The court said:

> The purpose of underinsured coverage is to provide an individual, injured by a motorist who carries less insurance than the minimum required in Minnesota, with no less coverage than the injured party would receive had the tortfeasor been insured as required by the Safety Responsibility Act.
>
> Where the tortfeasor carried liability insurance in an amount equal to the "underinsured motorist" coverage car-

ried by decedents, the tortfeasor was not "underinsured."

*Id.* at 794–95. Subsequently, the Minnesota supreme court in *Thiry v. Horace Mann Mutual Insurance Co.*, 269 N.W.2d 66 (Minn.1978), followed the *Lick* decision in holding that the tortfeasor could not be held to be an underinsured motorist where the limits of liability on the tortfeasor's vehicle were the same as the underinsured motorist coverage on the plaintiff's own policy. The fact that the judgment against the tortfeasor was greater than the liability insurance coverage was deemed immaterial. *Id.* at 68. These two decisions are no longer authoritative in Minnesota, but only because the statute was replaced with statutory no-fault insurance, not because their reasoning is unsound. *See Holman v. All Nation Insurance Co.*, 288 N.W.2d 244, 251 (Minn.1980).

The vehicle in which the victims in this case were passengers was covered by liability insurance totaling $120,000. The underinsured vehicle coverage of United's policy was $50,000. I would uphold the trial court's conclusion and ruling that the tortfeasor's vehicle was certainly not an "underinsured motor vehicle" under either the provisions of United's insurance policy or within the intendment of pertinent Iowa insurance statutes.

II. The majority's interpretation of statutory requirements for underinsured vehicle coverage also eliminates from United's policy and reads out of section 516A.2 provisions which allow the insurer to avoid duplication of insurance or other benefits.

The clause in United's policy which limited liability for underinsured vehicle coverage to $50,000 also provided:

> However, the limit of liability shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible.

The trial court concluded that that language was consistent with Iowa Code sections 516A.2 and .4 which provide in pertinent part:

> Such forms of coverage may include terms, exclusions, limitations, conditions, and offsets which are designed to avoid duplication of insurance or other benefits.

Iowa Code § 516A.2.

> In the event of payment to any person under the coverage required by this chapter and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.

Iowa Code § 516A.4. We recently addressed the subject of duplication of insurance benefits under Iowa Code chapter 516A in *Davenport v. Aid Insurance Co.*, 334 N.W.2d 711 (Iowa 1983). There, the plaintiff contended that an insurer could not offset against uninsured vehicle coverage the amount of a settlement received from a third-party tortfeasor. Although a majority of jurisdictions supported the plaintiff's view, we held in *Davenport* that the insurer's policy provisions allowing an offset were consistent with the Iowa statute and should be enforced. We said:

> Here, the plain language of section 516A.2 compels us to reject the majority view and to allow insurers the right to prepare policies which prevent "duplication of insurance or other benefits."

*Id.* at 715.

I believe the result reached by the majority opinion cannot be squared with the holding and language of *Davenport.* Nothing in chapter 516A expressly or impliedly deprived United of its right to write that reimbursement provision into its policy; instead, sections 516A.2 and .4 affirmatively permitted it to do so.

We have often declined to read into statutes language which the legislature could have supplied had it so intended. *See, e.g., Neumeister v. City Development Board,*

291 N.W.2d 11, 14 (Iowa 1980); *Hamilton v. City of Urbandale*, 291 N.W.2d 15, 19 (Iowa 1980). I would affirm the decision of the trial court which was based on what the legislature said in amending Iowa Code chapter 516A and not what it might have said.

SCHULTZ and CARTER, JJ., join in this dissent.