## CIRCUIT COURT OF CHESTERFIELD COUNTY

April Annette Plummer

v.

Allstate Insurance Co.

January 28, 1987

By JUDGE ERNEST P. GATES

This action was submitted for decision by the Court on a "Stipulation of Facts" and briefs of counsel.

The plaintiff in this suit, and one other person, were both injured in the same motor vehicle accident. On March 11, 1986, plaintiff was awarded judgment for $105,000.00 for her injuries. Of this amount, she recovered $38,478.57, her court-apportioned share of the tortfeasor's $100,000.00 liability insurance coverage. Both victims and their counsel signed an agreement, dated March 10, 1986, purporting to preserve their underinsurance carriers' subrogation rights against the tortfeasor, but agreeing to not personally pursue the tortfeasor for any excess above the amount they received against his liability insurance. Plaintiff now seeks to collect $61,521.43 from her own insurance carrier, or the difference between her underinsured motorist coverage and what she recovered from the tortfeasor's liability insurance.

The tortfeasor was insured by the Liberty Mutual Insurance Company which provided him with coverage in the total amount of $100,000.00 liability insurance. Ms. Plummer's vehicle was covered by a policy of insurance

written by the Allstate Insurance Company which provided for single limits of $100,000.00 for both uninsured and underinsurance motorist coverage and $300,000.00 total liability. This policy conforms with Section 38.1-381(b) and (c).

Allstate Insurance Company, the defendant, plaintiff's insurer, claims that the tortfeasor was not underinsured. Allstate also argues that by signing the agreement proffered by counsel for the tortfeasor and his insurer, the two victims released both the tortfeasor and any claim they had to underinsured motorist coverage on their own policies. Plaintiff replies that, even if she intended to destroy her insurer's right of subrogation, the document that she signed was ineffective to override the controlling statute.

The issues are:

A. Insofar as "underinsured" is defined by comparing the limits of the tortfeasor's liability insurance to the limits of the victim's underinsured motorist coverage, is the tortfeasor underinsured when the limits of his liability policy provide less compensation per accident than the victim's underinsured motorist coverage provides per accident?

B. Policy limits notwithstanding, is a tortfeasor underinsured when, because of multiple claims, the victim actually recovers from the tortfeasor's liability carrier an amount less than the underinsured motorist protection she purchased?

C. Does a release expressly reserving the subrogated insurer's claim against the tortfeasor, but releasing any further claim the victim might individually make against the tortfeasor, destroy the insurer's right of subrogation and release it from any obligation of payment on the victim's underinsured motorist contract?

The ultimate issue is: "Whether the facts of this case may justify the payment of underinsured motorist coverage pursuant to Va. Code Section 38.1-381(b) and (c)?"

My answer to the ultimate question is yes. I answer questions A and B in the affirmative, question C in the negative.

Underinsured coverage is intended to remedy the shortcomings when uninsured motorist coverage is not

provided. It is an additional source of recovery for an injured party. Why not give an insured the coverage he deemed necessary and which he purchased?

It was designed to cover, among other situations, where multiple claims against the tortfeasor's liability insurance deplete the policy limits, or the limits are less than the claimant's damage.

Under former Va. Code 38.1-381(b) and (c) [now Va. Code Section 38.2-2206 (Repl. Vol. 1986)], a vehicle is underinsured if the amount of liability carried by the tortfeasor is less than the uninsured motorist protection purchased by the injured party. Va. Code Section 38.1-381 defined an underinsured motor vehicle as follows:

> A motor vehicle is underinsured when, and to the extent that, the total amount of bodily injury and property damage coverage applicable to the operation or use of such vehicle. . . is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of such vehicle.

Va. Code Section 38.2-2206 (Repl. Vol. 1986) uses the same language. Both the current and former Code sections provide that:

> Where such insured contracts for. . . limits [in excess of the minimum prescribed by the financial responsibility statute], the endorsement thereon shall obligate the insurer to make payment for bodily injury or property damage caused by the operation or use of an underinsured motor vehicle to the extent such vehicle is underinsured, as defined. . . .

Va. Code Section 38.1-381(b) [now Va. Code Section 38.2-2206(A)].

To determine if a vehicle is underinsured, the statute compares the total liability insurance coverage on the tortfeasor's vehicle to the "total amount of uninsured motorist coverage afforded any person injured" in an accident with the tortfeasor's vehicle. If the victim's uninsured driver coverage exceeds the tortfeasor's liability

coverage, the tortfeasor's vehicle is underinsured. See *Uninsured Motorist Coverage in Virginia: The Scope of Protection and the New Underinsurance Provisions*, 69 Va. L. Rev. 355, 365 (1983).

In this case, the tortfeasor carried $100,000.00 single-limit liability insurance for "each occurrence," while the plaintiff carried uninsured motorist coverage of $100,000.00 "each person" and $300,000.00 "each accident."

The defendant Allstate argues that the "per victim" limit of the plaintiff's policy is the measure to determine whether the tortfeasor in this case was underinsured, as opposed to comparing plaintiff's coverage "per accident" to defendant's coverage per accident. Defendant appears to base his argument on the language in Va. Code Section 38.1-381(c), which defines an underinsured *"motor vehicle"* by examining the "total amount of uninsured motorist coverage afforded any person injured." The defendant's counsel would appear to argue that the tortfeasor was not underinsured because his single-limit $100,000.00 "each occurrence" policy is equal to the plaintiff's underinsured coverage because plaintiffs individually could not recover more than $100,000.00.

This interpretation of the statute ignores the difference between the two parties' limits of coverage per "each occurrence" or "each accident." The statute gives an insured the opportunity to purchase uninsured and underinsurance motorist coverage equal to but not exceeding his own liability insurance. Va. Code Section 38.1-381(b) [now Va. Code Section 38.2-2206(A)]. It also directs the insurer to pay claims for personal or property damage caused by an underinsured motor vehicle, insofar as that vehicle is underinsured, as determined by comparing the total liability coverage of the tortfeasor's policy to the victim's "total amount of uninsured motorist coverage." Va. Code Section 38.1-381(c). Stated differently, the statute permits individuals purchasing motor vehicle insurance to protect themselves against drivers with inadequate insurance in the same amounts for which they are willing to purchase liability insurance for the protection of others should they be at fault. *See* J. Appleman, *Insurance Law and Practice*, Section 5103 at 515-16 (1981).

If both the plaintiff's and the tortfeasor's insurance had been of equal amounts as the defendant insurer contends, then the driver in this case would have had $300,000.00 "each occurrence" liability coverage. Were that the case, both this plaintiff and the second claimant, would then have recovered up to $100,000.00 "each person" of their judgments, which totaled $255,000.00 from the tortfeasor's liability carrier. There would have been no need for apportionment by the Court, nor their underinsurance claims and this lawsuit. Instead, the Court apportioned to both victims lesser amounts ("the balance of the driver's automobile insurance policy limits"), which totaled $93,439.95, payable by the tortfeasor's insurance carrier from his $100,000.00 total liability coverage.

The defendant insurance company's conclusion that the driver in this accident was not underinsured appears to be inconsistent with Va. Code Section 38.1-381 with respect to total coverage. The language of the uninsured motorist statute is strictly construed and the plain meaning accorded its words. *Wood v. State Farm Mutual Automobile Insurance Co.*, 432 F. Supp. 41 (W.D. Va. 1977), citing *Rose v. Travelers Indemnity Co.*, 209 Va. 755, 758, 167 S.E.2d 339 (1969). "The uninsured motorist statute should be liberally construed; however, the Court must look to the words used in the statute to determine its meaning, and only the meaning of the statute as determined should be given effect." *Wood*, 432 F. Supp. at 43.

Defendant insurer cites two cases in support of its position, both are not suitable to these facts. *Tudor v. Allstate Insurance Co.*, 216 Va. 918, 224 S.E.2d 156 (1976), was decided before the uninsured motorist statute was amended to include underinsured motorist coverage. When *Tudor* was decided, the legislature's definition of an uninsured driver did not embrace the underinsured claim. Defendant's construction of the current statute would resurrect the very problem the legislature presumably intended to cure by expanding its definition of uninsured motorists to include underinsured drivers.

Following the defendant's reasoning, this plaintiff is only entitled to recover $38,478.57 of her $105,000.00 judgment, but would have recovered $100,000.00 had the tortfeasor been uninsured, not just inadequately insured to cover all the claims arising from his negligence. This

is the anomaly noted in *Tudor* and corrected by the legislature in 1982. *See State Farm Mutual Automobile Insurance Company v. Anderson*, 332 So. 2d 623, 625 (Fla. Dist. Ct. App. 1976). "We think the intent of the legislature [in amending the definition of uninsured to include underinsured] was to prevent persons buying automobile insurance protection against personal injury caused by motorists who had no automobile liability coverage from losing that protection in the event the motorist inflicting injury has some liability insurance coverage but not enough coverage to adequately compensate the injured person."

Defendant also cites *Davidson v. United State Fidelity and Guaranty Co.*, 78 N.C. App. 140, 336 S.E.2d 709, 710-711 (1985). In that case, the insured could only recover the difference between his underinsured motorist policy and the tortfeasor's liability insurance. The insured plaintiff carried $25,000.00 underinsured motorist coverage and received a $25,000.00 settlement from the tortfeasor, the policy limit on the latter's liability coverage.

I now answer Question B.

An alternative approach to the problem raised by this suit is to attempt to construe what the legislature intended by the language it selected in defining an underinsured motor vehicle. What effect, if any, does the exhaustion of the limits of a liability policy by multiple claims have in determining whether the liability coverage "applicable to. . . the motor vehicle. . . is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle?" Va. Code Section 38.1-381. As an attempt to remedy the typical shortcomings of uninsured motorist statutes, among other things, "underinsured motorist coverage may provide a source of recovery where multiple claims against the tortfeasor's liability insurance deplete the policy limit so that less than the financial responsibility limit or less than a claimant's damages are available to him." 36 Fed'n Ins. & Corp. Couns. Q. at 121. See also *Appleman, supra*, Section 5071.45 at 104 and Section 5108 at 565.

Different Courts have reached different conclusions on the question of exhaustion, largely dependent on the language of a particular statute. *See*, *generally*, *Russ*,

*Uninsured and Underinsured Motorist Coverage: Recoverability, Under Uninsured or Underinsured Motorist Coverage, of Deficiencies in Compensation Afforded Injured Party by Tortfeasor's Liability Coverage,* 24 A.L.R. 4th 13 (1983).

> Some courts have allowed the injured party to recover the difference between the amount actually received from the tortfeasor's insurer and the minimum amount required by the financial responsibility law. . . some courts have allowed recovery of the difference between the amount actually received from the tortfeasor's insurer and the limits of the uninsured motorist policy . . . and some courts have denied recovery on the ground that the tortfeasor's compliance with the financial responsibility law precluded the conclusion that he was "underinsured."

*Id.* at 17. According to at least one commentator, "where multiple claimants are involved, Courts have generally held that the statute contemplates the "effective" liability limits rather than the "paper" liability limits. In other words, it is the collectible limits available to the claimant which are to be compared with the claimant's damages or underinsured motorist limits to determine whether the tortfeasor is underinsured." 36 Fed'n Ins. & Corp. Couns. Q., *supra,* at 125.

The author of *Uninsured Motorist Coverage in Virginia,* 69 Va. L. Rev. 355, anticipated this question with respect to Virginia law, but found the language of the statute uncertain as to the meaning of "applicable coverage." This language could be construed to mean either the face value of the tortfeasor's liability policy, or the amount actually paid the injured party.

> As an interpretation of statutory language, both constructions are tenable. In terms of policy, however, the construction favoring the insured better effectuates the compensatory goals of the statute. . . . It would be inequitable and contrary to the compensatory goals of the statute to grant the same claimant less coverage simply because the other driver was

insured and the accident produced more than one victim.

69 Va. L. Rev. at 370. *See also St. Paul Fire and Marine Insurance Co. v. S. L. Nusbaum & Co.*, 227 Va. 407, 316 S.E.2d 734 (1984). With respect to insurance contracts, "the Courts. . . have been consistent in construing the language of insurance policies, where there is doubt as to their meaning, in favor of the interpretation which grants coverage, rather than that which withholds it. Where two constructions are equally possible, that most favorable to the insured will be adopted." *Id.* at 411.

In *Jones v. Travelers Indemnity Co.*, 368 So. 2d 1289, the Supreme Court of Florida held: "In *Dewberry v. Auto-owners Insurance Co.*, 363 So. 2d 1077 (Fla. 1978) . . . We held that where benefits under the tortfeasor's policy have been partially exhausted by payment of claims to persons other than the insured, then the insured is entitled to 'excess over' the amount received from the tortfeasor's carrier up to the limits of the claim or the policy, whichever is less. This is so because the 'excess-over' is to be measured by the amount of the tortfeasor's coverage which is 'available' to the insured."

The Court held that where insured settled for less than the maximum coverage under tortfeasor's liability policy because of competing claims, insured was entitled to the $5,000.00 difference between amount of settlement, i.e. the amount of the tortfeasor's liability coverage which was available to the insured and the limits of her uninsured motorist coverage.

Recovery was also allowed in a similar case in Louisiana, where the statute defined underinsured vehicles by comparing the limits of the liability and uninsured motorist policies. *Butler v. MFA Mutual Insurance Co.*, 356 So. 2d 1129, 1132 (La. Ct. App., 1978). The *Butler* court used the "*effective* liability coverage (emphasis in the original)" to determine whether the tortfeasor's car was underinsured. Therefore, where policy limits were $15,000/30,000 and $10,000/20,000 liability, versus $10,000/20,000 (stacked) uninsured motorist coverage, but other claims had used up all but $6,004.75 of the liability coverage, the plaintiff was allowed to recover $10,000 (of a $16,900.75 judgment) from his own carrier. *Id.* at 1132-33.

> Because of the multiple claims filed against the insurers of these vehicles, and the court's apportionment of the policy proceeds, the effective liability coverage was less than the uninsured motorist coverage carried by plaintiff . . . . It is apparent that the legislature intended the insured should be reimbursed by his own insurer in these instances in the amount at least equal to the uninsured motorist coverage carried by him.

*Id.*

In *American States Insurance Company v. Estate of Tollari*, 362 N.W.2d 519 (Iowa 1985), with three justices dissenting, the Supreme Court of Iowa defined the meaning of "underinsurance" in that state's statute. *Id.* at 521. Like Virginia, in *Tudor, supra*, the Iowa court had previously held that "uninsured" did not include cases involving underinsured drivers, before its statute was amended in 1980 to include coverage against the underinsured. *Id.* When amended, the Iowa statute required underinsurance protection be offered in amounts at least equal to the state's financial responsibility requirements. *Id.* In *American States*, the claimant shared the tortfeasor's liability coverage with four other people, each collecting one-fifth plus interest, or $24,000 of $120,000 total liability coverage. The claimant carried $50,000 underinsured coverage. The court reached the conclusion that "the General Assembly intended to include only the amount of the tortfeasor's liability insurance which is available to the victim who has underinsurance coverage, in this case, $24,000. The remaining $96,000 of liability insurance on the [tortfeasor's] car is illusory so far as the Tollari estate is concerned; the estate has no way of obtaining it." *Id.* at 522.

In this case the plaintiff's uninsured motorist policy provides greater protection, $100,000.00 per person/$300,000.00 per accident than the effective coverage available to her under the tortfeasor's policy ($38,478.57). Applying the reasoning in the above cases, I believe the offending vehicle was underinsured and the plaintiff can recover from her own carrier. The insurer

can recover under her underinsured motorist coverage her loss from the tort less the tortfeasor's *available liability* insurance proceeds, subject to her underinsured coverage limit.

Next I come to the question whether the release prevents the plaintiff from recovering.

Plaintiff argues that the uninsured motorist statute is strictly construed and controls over any conflicting provisions in a given policy, is apparently the general rule. So, too, it is the general rule as the defendant contends that "where the insured forecloses the insurer's right to subrogation by releasing the tortfeasor, the insurer is released from its liability to pay policy benefits." The general rule does not, however, appear to state the complete law of subrogation. In some states, the insurer will not be relieved of its obligation to pay on the insurance contract if it has suffered no prejudice by the loss of subrogation. Where the tortfeasor was underinsured, but also impoverished and completely judgment proof, the insurance company could not have gained anything through subrogation; hence, underinsured's policy motorist coverage was not forfeited.

In this case the insurer's right of subrogation was not destroyed because the release was a conditional release. In *Atlantic Richfield Co. v. Interstate Oil Transport Co.*, 505 F. Supp. 840 (S.D. N.Y. 1981), the Court held:

> An insurer. . . acquires no right of subrogation until it pays the loss, and where a third-party tortfeasor is effectively released from liability by a settlement between the insured and the tortfeasor entered into before an insurer's payment of the loss, the settlement and release bar the insurer's right of recovery from the tortfeasor, in the absence of fraud or collusion against the insurer. Where, however, the instrument of release running from the insured to the tortfeasor provides that the settlement is not intended to discharge the insurer from any claim that the insured might have against it, and the instrument of release is given after receipt of payment covering only part

of the loss, the insurer's right of subrogation against the tortfeasor is not barred to the extent that the amount paid did not cover the loss. Particularly is this so where, as in this case, the settlement between the insured and the tortfeasor contemplates that the insured will thereafter pursue its claims with respect to the loss against the insurer. . . .

Put starkly, the insured (American) settled with the tortfeasor (defendant), with the specific understanding on the part of both that the amount paid in settlement was less than the loss, and that the insured retained the right to recoup the balance of the loss from the insurer (plaintiff).

The impact of the settlement between defendant and American was to prevent plaintiff from interposing the settlement as a defense to American's counterclaims in the cargo action. To the extent that the settlement amount did not compensate American in full for its damages, the language of the settlement preserved American's right to recover against plaintiff on its counterclaims, for the balance. As to plaintiff it is as though there were no settlement between American and defendant. Defendant's settlement with American could not, therefore, extinguish plaintiff's claims against defendant.

The release here is not a general release. It does not release the tortfeasor from all further claims arising from the accident. Instead, all parties expressly acknowledged the possible liability of the tortfeasor to the underinsured motorist carrier; the injured parties agreed only that they personally would not further pursue the tortfeasor in the event they failed to collect from their underinsured motorist policies. The injured party in this case signed a qualified release of the tortfeasor and his liability insurer, but expressly reserved the right of the underinsured carrier-in-subrogee to recover from the tortfeasor.

The plaintiff can recover judgment against the defendant in the amount of $61,521.43 plus court costs.