Nancy M. **KAPADIA**, Appellant,

v.

**PREFERRED RISK MUTUAL INSURANCE COMPANY,**
Appellee.

No. 86–1203.

Supreme Court of Iowa.

Jan. 20, 1988.

As Corrected Feb. 22, 1988.

David S. Wiggins and Robert K. DuPuy of LaMarca, Marcucci, Wiggins & Anderson, P.C., Des Moines, for appellant.

Brett I. Anderson, West Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

On October 13, 1981, appellant, Nancy Kapadia, was involved in an automobile accident with Arlene M. Knight. On that date, Kapadia was an insured under a policy issued by appellee, Preferred Risk Mutual Insurance Company. This policy included an underinsured motorist endorsement. Two months after the accident, Kapadia, without the written consent of Preferred Risk, entered into a settlement with Knight for $15,000, the limit of Knight's liability insurance policy. Kapadia, alleging damages in excess of that amount, then sought to recover from Preferred Risk under the underinsured motorist endorsement. Preferred Risk, contending Kapadia had breached a "consent-to-settle" clause contained in her policy, moved to dismiss and, subsequently, for summary judgment. The district court, finding the clause valid and Kapadia admittedly in violation thereof, granted the summary judgment motion. This appeal followed.

Kapadia maintains the district court erred by granting Preferred Risk's motion for summary judgment. The standards governing our review of summary judgment determinations are well settled. Iowa Rule of Civil Procedure 237(c) provides that summary judgment

> shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In reviewing the grant of summary judgment under this rule, the question is whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *Suss v. Schammel,* 375 N.W.2d 252, 254 (Iowa 1985); *Brown v. Monticello State Bank,* 360 N.W.2d 81, 83–84 (Iowa 1984). An issue of

fact is "material" only when the dispute is over facts that might affect the outcome of the suit, given the applicable governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at ——, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. *Adam v. Mt. Pleasant Bank & Trust Co.*, 355 N.W.2d 868, 872 (Iowa 1984). We examine the record in a light most favorable to the party opposing the motion for summary judgment to determine if movant met his or her burden. *Matherly v. Hanson*, 359 N.W.2d 450, 453 (Iowa 1984).

Although it may be rejected by an insured, underinsured motorist coverage must be provided in every automobile liability insurance policy delivered or issued for delivery in this state. Iowa Code § 516A.1 (1981). Such coverage was provided by Preferred Risk and accepted by Kapadia in the present case. The issues we must decide concern the effect of the following provision contained in Kapadia's underinsured motorist endorsement:

> This insurance policy does not apply:
>
> b. to bodily injury to an insured with respect to which such insured, his legal representative or any person entitled to payment under this insurance, shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefore....

The district court concluded this provision was an enforceable method by which Preferred Risk could protect subrogation rights which the court found were "conceivabl[y]" granted an insurer by Iowa Code section 516A.4 (1981). In addition, the district court concluded the consent-to-settle clause did not violate the public policies which supported the underinsured coverage mandated by Iowa Code section 516A.1 (1981).

Iowa Code section 516A.4 (1981) provides, in pertinent part, as follows:

> In the event of payment to any person under the coverage required by this chapter and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.

In addition, Kapadia's underinsured motorist endorsement provides that

> [i]n the event of any payment under this insurance, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured, shall do nothing after loss to prejudice such rights.

Kapadia contends the consent-to-settle clause is invalid as not authorized by chapter 516A and as violative of the public policy underlying that statute. The purpose of underinsured motorist coverage is to provide compensation to the extent of injury, subject to the limits of the particular policy. *American States Ins. Co. v. Tollari*, 362 N.W.2d 519, 522 (Iowa 1985). We have recently distinguished this purpose from that which supports the offering of uninsured motorist coverage, noting that in the latter context the purpose is to guarantee a minimum recovery. *Kluiter v. State Farm Mut. Auto. Ins. Co.*, 417 N.W. 2d 74, 75 (Iowa 1987).

In determining the thrust of the public policy upon which Kapadia relies, however, we must take account of the fact that in our state underinsurance coverage is mandatory only in the sense that a particular level of such insurance need be offered. Chapter 516A does not require that such coverage be, in fact, a part of all coverage in effect in this state. For example, an insured may defeat such coverage by re-

jecting it in writing. Iowa Code § 516A.1 (1981).

The terms of an underinsurance policy are to be construed in light of the purposes and intent of chapter 516A. *Tri-State Ins. Co. of Minnesota v. DeGooyer*, 379 N.W.2d 16, 17 (Iowa 1985). It is no less true, however, that the policy in favor of full compensation enunciated in *Tollari*, 362 N.W.2d at 522, is limited by express statutory language which allows for a contrary result. We said as much in *DeGooyer* when we sanctioned an underinsurer's antistacking provisions notwithstanding our acknowledgement of *Tollari's* full-compensation principle. 379 N.W.2d at 18–19. In this vein, we note that section 516A.4 makes the relative rights of the insurer and insured, following payment of policy benefits, "subject to the terms and conditions" of their policy. The terms and conditions of Kapadia's policy provided for Preferred Risk's subrogation to Kapadia upon payment and further provided that Kapadia was not to settle with a tort-feasor without Preferred Risk's consent or do anything else which would prejudice Preferred Risk's right of subrogation. Our jurisprudence has long imposed such rights of subrogation as a matter of law. *See, e.g., Glancy v. Ragsdale*, 251 Iowa 793, 802, 102 N.W.2d 890, 896 (1960). We do not construe a statute so as to take away common-law rights existing at the time of the statute's enactment unless that result is imperatively required. *E.g., Ford v. Venard*, 340 N.W.2d 270, 273 (Iowa 1983). In addition, we note that contract-based subrogation rights—known as a "conventional subrogation"—are not subject to the rule which stays their enforcement until the subrogator (Kapadia here) is made whole. 73 Am.Jur.2d *Subrogation* § 2 at 599 (1974); *see Davenport v. Aid Ins. Co.*, 334 N.W.2d 711, 713–15 (Iowa 1983) (requirement that insured first be made whole modified by Uninsured Motorist Act, Iowa Code section 516A.4).

Those cases in which this court has stricken policy provisions as violative of chapter 516A present situations in which the policies, in light of the particular offensive provisions, failed to provide the scope of coverage required by that chapter. *See Lindahl v. Howe*, 345 N.W.2d 548 (Iowa 1985); *Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 903 (Iowa 1973). Accordingly, the provisions fell under the logic that "an insurer may not sell less coverage than is required by the statute." *Lindahl*, 345 N.W.2d at 551. The case at bar does not present us with a similar question, however, as the scope of coverage which the statute requires be made available to Kapadia was, in fact, made available to her. Rather, the present case asks whether an insurer, in seeking to perform under its contract with an insured, may attempt to protect its interests by use of subrogation and consent-to-settlement clauses. We think that it may. While we recognize chapter 516A was not written to protect the policy vendor, *Rodman*, 208 N.W.2d at 909, we do not think it may be used to destroy that vendor's legitimate interests.

We hold that such subrogation clauses are consistent with the language and spirit of chapter 516A and that they may be protected by the use of consent-to-settlement clauses. We note that a number of other jurisdictions have upheld the use of a consent-to-settlement clause as an enforceable method of protecting an insurer's subrogation rights both in the context of underinsured motorist coverage, *see March v. Mountain States Mut. Casualty Co.*, 101 N.M. 689, 691–93, 687 P.2d 1040, 1043–44 (1984) (protection of insurer's contract-based subrogation rights); *State Farm Mut. Auto. Ins. Co. v. Taglianetti*, 122 App.Div.2d 40, 41, 504 N.Y.S.2d 476, 476 (1986); *Miller v. Hanover Ins. Co.*, 718 S.W.2d 429, 430 (Tex.App.1986), and in the context of uninsurance coverage, *see, e.g., Benson v. Farmers Ins. Co.*, 227 Kan. 833, 836–38, 610 P.2d 605, 608–10 (1980) (protection of insurer's statutory subrogation rights); *Allstate Ins. Co. v. Meek*, 489 N.E. 2d 530, 532–33 (Ind.App.1986); *U.S. Fidelity & Guaranty Co. v. Hillman*, 367 So.2d 914, 922 (Miss.1979) (protection of insurer's statutory subrogation rights); *Worobec v. State Farm Mut. Auto. Ins. Co.*, 200 Neb. 210, 214–15, 263 N.W.2d 95, 97–98 (1978)

(protection of insurer's contract-based subrogation rights). We emphasize that we today hold only that chapter 516A allows for, and is consistent with, the type of subrogation clause contained in Kapadia's policy. We do not reach the question of whether section 516A.4 in and of itself grants a right of subrogation to the insurer. We note only that this latter issue has been resolved differently by other courts. *Compare Craig v. Iowa Kemper Mut. Ins. Co.*, 565 S.W.2d 716, 726 (Mo.App.1978) (interpreting identical statutory language as creating subrogation rights in insurer) *with Niemann v. Travelers Ins. Co.*, 368 So.2d 1003, 1006–07 (La.1979) (interpreting identical statutory language as not creating subrogation rights in insurer). Finally, although the extent of the contractual subrogation right is not fixed until a loss payment is made, a contingent subrogation right in favor of the insurer arises when the loss occurs. *March,* 101 N.M. at 691, 687 P.2d at 1042–43. This right is protected by the consent-to-settlement clause as well. *Id.*

■ We do not think these holdings completely resolve the present appeal, however. While we believe the public policy behind our underinsurance law allows for the use of consent-to-settlement clauses, we do not believe it advisable, or consistent with that policy, to allow for the complete destruction of an insured's right to recovery merely because of the clause's breach. It has been recognized, in the context of uninsurance coverage, that given the tort-feasor's financial irresponsibility, insurer's subrogation rights are in fact "of little, if any, value." *Bailey v. State Farm Fire & Casualty Ins. Co.*, 621 F.Supp. 1016, 1018 (S.D.Miss.1985). Similar concerns, when combined with our policy in favor of an insured's full recovery to policy limits under an underinsurance policy, convince us to join with those states which, when faced with similar clauses in either un- or underinsured policies, have required a demonstration be made of actual prejudice to the insurer prior to its discharge under the consent-to-settlement clause.

The supreme court of Washington, sitting en banc in a case involving an insured's right to recovery from her insurer following a $15,000 settlement from the tort-feasor, relied on the rule "that if an insurer has not been prejudiced by a settlement and release, it cannot deny recovery on the policy." *Thiringer v. American Motors Ins. Co.*, 91 Wash.2d 215, 218, 588 P.2d 191, 193 (1978); *see also* 6A Appleman, *Insurance Law and Practice* § 4093 at 261 (rev.1972). The appellate courts of Florida and Illinois have reached similar conclusions. *See New Hampshire Ins. Co. v. Knight,* 506 So.2d 75, 78 (Fla.App.1987); *Marsh v. Prestige Ins. Group,* 58 Ill.App. 3d 894, 896–97, 16 Ill.Dec. 390, 392, 374 N.E.2d 1268, 1270 (1978).

■ We favor this approach. We note that Iowa law places the ultimate burden of showing actual prejudice on the defendant insurance company when it asserts as a defense that its insured breached the policy provision that the insured shall give notice and furnish proof of loss within a reasonable time. *Henschel v. Hawkeye–Security Ins. Co.*, 178 N.W.2d 409, 415 (Iowa 1970); *see also Marsh,* 58 Ill.App.3d at 896–97, 16 Ill.Dec. at 392, 374 N.E.2d at 1270 (burden of showing prejudice placed on insurer). Accordingly, we hold that the insurer may establish the breach of the consent-to-settlement clause as an affirmative defense to recovery on the underinsurance endorsement if it proves that, absent such a breach, it could have collected from the tort-feasor under its rights embraced by the contractual subrogation clause. *Cf. Pickens, Barnes & Abernathy v. Heasley,* 328 N.W.2d 524, 525–26 (Iowa 1983) (demonstration of potential judgment's actual collectability required for successful legal malpractice action).

As the issue of prejudice is not, under these circumstances, appropriate for summary judgment resolution, we reverse the judgment of the district court and remand this case for proceedings consistent herewith.

REVERSED AND REMANDED.