442 N.W.2d 113 (1989)
In the Matter of the ESTATE OF Herbert F. RUCKER, Deceased.
Roseva RUCKER, Appellee,
v.
NATIONAL GENERAL INSURANCE COMPANY, Appellant.
No. 88-669.
Supreme Court of Iowa.
June 14, 1989.
David L. Phipps and Thomas Henderson of Whitfield, Musgrave & Eddy, Des Moines, for appellant.
*114 Brad McCall and Lewis M. Girdner of Brierly, McCall, Girdner, Chalupa, McCall & Otto, Newton, for appellee.
Considered en banc.
ANDREASEN, Justice.
This appeal deals with the developing area of underinsured motorist coverage. Here, we must decide if an insured can be required to fully exhaust the policy limits of the tortfeasor's liability carrier as a precondition to claiming and receiving underinsured motorist benefits. If the insured is permitted to make settlement with the tortfeasor's liability carrier for less than the full policy limits, we must then determine the effect of this settlement upon the damages recoverable under the underinsured motorist policy provisions.
I. On June 4, 1986, Herbert F. Rucker was killed when the bicycle he was riding was struck from behind by a pickup truck driven by Carl F. Bunse. Bunse had automobile liability insurance coverage with Farm Bureau Mutual Insurance Company (Farm Bureau). This liability coverage had limits of $100,000. The estate of Mr. Rucker (estate) entered into a settlement with Farm Bureau in January 1987. Prior to final settlement with Farm Bureau, the estate notified Mr. Rucker's automobile insurance carrier, National General Insurance Company (National), of the terms of the offered settlement and its intent to accept the offer. National notified the estate that the underinsured motorist policy provisions required full exhaustion of the Farm Bureau policy. Under their settlement with Farm Bureau, the estate received an immediate cash payment of $25,750 and monthly payments of $500 for the lifetime of Mr. Rucker's spouse. These payments were guaranteed to continue for a minimum of fifteen years. The present value of this settlement, including the immediate cash payment, was $85,250 and the guaranteed minimum payout to the estate was $115,750.
After finalizing this settlement with Farm Bureau and Bunse, the estate made claim for underinsured motorist benefits from National. This underinsured motorist policy provided coverage limits of $20,000. National refused to pay this claim because of a policy clause that required the estate to exhaust the liability policy limits before making a claim on the underinsured policy. Specifically, the provision stated:
[National] will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.
The estate subsequently filed an action against National for payment of the underinsured motorist benefits. Both parties requested a declaratory ruling from the court as to whether the estate failed to satisfy a condition of the policy by accepting a settlement from Farm Bureau which had a present value of less than the liability policy limits. The estate argues that the exhaustion requirement of the underinsured policy should be considered void as against public policy.
The district court treated the estate's petition for declaratory judgment and National's motion for summary judgment as a motion for adjudication of law points pursuant to Iowa Rule of Civil Procedure 105. The district court ruled that the exhaustion provision was valid and did not violate public policy. In considering whether the settlement satisfied the policy requirement, the court looked to the guaranteed pay-out figure of $115,750 rather than the settlement's present value of $85,250. In a nunc pro tunc order, the court provided that the estate could recover against National provided the estate proved damages in excess of the $100,000 policy limit. National filed an application for interlocutory appeal which this court granted.
II. Although the trial court found the settlement with Farm Bureau was valued in excess of $100,000 of the $100,000 liability policy limit, we find as a matter of law that the value of a settlement should be determined at its present value. The structured settlement included both a cash payment and annuity payments. Generally, annuities are valued at their present worth or value. Cf. Sidles Distrib. Co. v. *115 Heath, 366 N.W.2d 1 (Iowa 1985) (weekly workers' compensation disability benefits commuted to a present value lump sum); In re Marriage of Bevers, 326 N.W.2d 896 (Iowa 1982) (employee pension benefits valued at its present worth in a dissolution of marriage proceeding); Mallinger v. Brussow, 252 Iowa 54, 105 N.W.2d 626 (1960) (loss to estate reduced to present worth in civil death case). The present value of the Farm Bureau settlement was $85,250. We must determine if the exhaustion clause in the underinsured motorist policy is enforceable. If unenforceable, we must determine the effect of settlement with the tortfeasor's liability carrier for less than full policy limits.
III. In 1980, Iowa Code section 516A.1 was revised to require automobile insurance policies to include both uninsured and underinsured motorist coverage unless the insured rejects the coverage in writing. See American States Ins. Co. v. Tollari, 362 N.W.2d 519, 521 (Iowa 1985). In Tollari, we stated that the purpose of underinsured motorist coverage is to provide protection from loss caused by a tortfeasor who is not financially responsible. If the tortfeasor has some liability insurance, but the insurance is insufficient to fully compensate the insured's loss, the insured can, under their own underinsured motorist coverage, recover the loss minus their recovery from the tortfeasor's liability insurance, subject to the limit of the underinsured motorist coverage. Id. at 522. In recovering under both the tortfeasor's liability policy and the insured's underinsured motorist policy, the insured is not entitled to any duplication of benefits. Id.
In Kapadia v. Preferred Risk Mut. Ins. Co., 418 N.W.2d 848 (Iowa 1988), we held an auto insurance policy with a subrogation clause is consistent with the language and spirit of chapter 516A and that such subrogation rights can be protected by the use of a consent-to-settlement clause. Id. at 851. We upheld the use of a consent-to-settlement clause as an enforcement method of protecting an insurer's subrogation rights. Id. However, we require the insurer to show actual prejudice before it claims the benefit of the exclusion.
In McClure v. Northland Insurance Cos., 424 N.W.2d 448 (Iowa 1988), we held that an injured person's recovery from an underinsured motorist policy could not be reduced by the amount of worker's compensation benefits received for the same injury. We rejected the narrow view of underinsured motorist coverage, which considers the goal of underinsured motorist coverage to place the injured parties in the same position they would be in if the tortfeasor had liability insurance equal to their own underinsured motorist limits. Id. at 449. We instead adopted the broad view of underinsured motorist coverage, which considers the goal of underinsured motorist coverage to be full compensation. Under this view, underinsured motorist coverage applies whenever the tortfeasor has less insurance than the victim has injury.
There are a minimum of three parties involved whenever an injured party makes a claim for underinsured motorist benefits. These parties are the injured party, the tortfeasor's liability insurance carrier, and the underinsured motorist insurance carrier. Because of this unique arrangement, the settlement of underinsured motorist claims can become very complicated. See 2 Widiss, Uninsured and Underinsured Motorist Insurance §§ 44.1-44.2 (2d Ed.1987) [hereinafter referred to as Underinsured Motorist Insurance].
In this case, the underinsured motorist policy provided that the insurer would pay underinsured benefits only after the limit of the tortfeasor's liability policy had been exhausted. The limit of Bunse's liability policy with Farm Bureau was $100,000. The settlement between Farm Bureau and the estate had a present value of $85,250, which was $14,750 less than the policy limit of $100,000. According to National, the estate is not entitled to underinsured motorist benefits because they failed to exhaust the entire $100,000 of liability coverage provided by the Farm Bureau policy.
Several public and private policy considerations favor allowing injured parties the flexibility of entering into a settlement *116 with the tortfeasor's liability carrier for less than the full amount of coverage. Requiring complete exhaustion of liability insurance limits will discourage prompt payment of claims and will increase the burdens of litigation. Determining whether a settlement has completely exhausted liability coverage may be difficult in cases of multiple injured parties or settlement offers which are made sequentially to several injured parties. See 2 Widiss, Underinsured Motorist Insurance § 44.2. Once a settlement is reached, the parties may, as in this case, dispute the value of the settlement.
Furthermore, it may be in the best interest of the injured party to settle a claim for an amount less than the tortfeasor's full amount of liability, even in situations when liability and damages are clear.
[I]t is well recognized that some liability insurers will seek to settle claimseven when the liability and damage issues are clearfor an amount that is somewhat less than the tortfeasor's insurance coverage. Claimants will often accept such "discounted" settlement amounts in order to avoid the uncertainty, costs and delay that a lawsuit, in lieu of the proposed settlement, would entail. Given the realities of the settlement process, claimants need some latitude to access the relative advantages and disadvantages of such settlement proposals.
Id. at § 44.2, p. 125.
Several decisions, although distinguishable, offer support for this policy argument. In Schmidt v. Clothier, 338 N.W.2d 256, 260 (Minn.1983), the Minnesota Supreme Court recognized that a settlement for less than the tortfeasor's limits may be more beneficial than undergoing the expenses and delays of litigation. In some cases, considerations entirely separate from the strength of the injured party's case may favor settlement for less than the full amount of the tortfeasor's liability. See United States Fidelity & Guaranty Co. v. Gordon, 359 So.2d 480, 482 (Fla.App. 1978) (tortfeasor had no assets to which a judgment in excess of the policy limits could attach); Colonial Penn Ins. Co. v. Salti, 84 A.D.2d 350, 354, 446 N.Y.S.2d 77, 80 (1st Dept.1982) (advanced age of injured parties create likelihood that any judgment from a trial would be substantially uncollectible). Other courts have rendered opinions consistent with these policy considerations. See Mulholland v. State Farm Mut. Auto. Ins. Co., 171 Ill.App.3d 600, 614-19, 122 Ill.Dec. 657, 665-68, 527 N.E.2d 29, 38-40 (5th Dist.1988); Longworth v. Van Houten, 223 N.J. Super. 174, 183-85, 538 A.2d 414, 419-20 (App.Div.1988); Bogan v. Progressive Cas. Ins. Co., 36 Ohio St.3d 22, 27, 521 N.E.2d 447, 452-53 (1988).
In sum, there are circumstances when the best interests of the injured party are served by a settlement from the tortfeasor's liability carrier for an amount less than the limits of the liability policy. In that case, the failure to fully exhaust the tortfeasor's insurance should not preclude a claim for underinsured motorist coverage. Further, the terms of the settlement will not be determinative of the extent of the claimant's damages for purposes of a subsequent underinsured motorist insurance claim. We hold that this type of exhaustion requirement violates public policy and will not be enforced.
IV. Whenever an injured party settles with the tortfeasor's liability carrier for less than the limits of the liability policy, there will be a "gap" between the amount settled for and the policy limits. In this case the gap is $14,750; the difference between the policy limit of $100,000 and the $85,250 present value of the settlement. We now consider the effect of a settlement for less than the liability policy limits on the underinsured motorist carrier.
The purpose of chapter 516A is to protect an injured party from a financially irresponsible tortfeasor who failed to carry adequate liability insurance. See Tollari, 362 N.W.2d at 522. "[U]nderinsurance coverage should apply when the tortfeasor has less insurance than the victim has injury." McClure, 424 N.W.2d at 449; see also Kluiter v. State Farm Mut. Auto. Ins. Co., 417 N.W.2d 74, 75 (Iowa 1987). The objective of the exhaustion clause in the underinsured motorist insurance policy is *117 to absolve the insurer from liability for any amounts which are below the stated limits of the underinsured tortfeasor's policy. This goal can be satisfied by allowing recovery only for those damages in excess of the tortfeasor's policy limits.
We hold that the injured party who settles with a tortfeasor's liability carrier shall be assumed to have received the policy limits of the tortfeasor's liability policy. Settlement by the injured party with the liability carrier is acknowledgment that the policy has been exhausted. Consequently, the injured party may only recover the difference between the liability policy limit and the damages suffered, subject to the underinsured motorist policy limits. In this case, for example, National may be liable for damages in excess of the $100,000 liability limit up to the $20,000 limit of the underinsured motorist policy.
This holding serves to prevent needless complication of the settlement process. If the underinsured motorist carrier is liable for any gap in coverage caused by the settlement between the injured party and the tortfeasor's liability carrier, the underinsured motorist carrier will have a strong interest in the settlement between the injured party and the tortfeasor's liability carrier. At some point, the interests of the underinsured motorist carrier and the injured party may conflict, resulting in disputes during or after the settlement process. In holding that the injured party is assumed to have settled for the full amount of liability coverage, this particular type of counterproductive dispute should be avoided. By allowing full credit of the tortfeasor's policy limit, the prejudice to the insurer is minimized.
The insured should have the right to accept what he or she considers the best settlement available against the tortfeasor without relinquishing underinsurance protection. The insured would still be required to prove his or her claim against the insurer including proof of the amount of the insured's loss that exceeded the tortfeasor's liability insurance coverage.
The order of the district court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
All Justices concur except CARTER, SCHULTZ, and NEUMAN, JJ., who dissent.
CARTER, Justice (dissenting).
I dissent.
Insurance policies should be given effect as written unless that interpretation conflicts with controlling statutory provisions. I find nothing in Iowa Code chapter 516A which suggests that underinsured motorist coverage is designed to provide the insured with the "best of all worlds" situation which the majority opinion envisions.
Requiring the insured to exhaust the policy limits of the tortfeasor's policy is not unreasonable. That requirement is intended to guard against the underinsured motorist carrier becoming a target defendant on a split cause of action. Moreover, those factors which caused the injured party to settle for less than the tortfeasor's insurance limits will ordinarily be matters which are fairly determinative of how much the claim is really worth irrespective of insurance coverage.
The injured party may, notwithstanding the exhaustion requirement, obtain the full realization of that party's underinsured motorist protection by litigating the claim to conclusion against the tortfeasor or effecting simultaneous settlements with the tortfeasor and the underinsured motorist carrier. Neither of these alternatives is so onerous to the insured as to make the exhaustion requirement unreasonable.
SCHULTZ and NEUMAN, JJ., join this dissent.