Myrle ATWOOD, Appellant,

v.

CITY OF DES MOINES, Appellee.

No. 91–52.

Supreme Court of Iowa.

May 13, 1992.

Rehearing Denied June 18, 1992.

Roger J. Kuhle of Law Office of Roger J. Kuhle, P.C., Des Moines, for appellant.

Bruce Bergman, City Sol., and Emily B. Gould, Asst. City Atty., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

CARTER, Justice.

Plaintiff, Myrle Atwood, a Des Moines police officer from 1978 to 1985, appeals from an adverse judgment in a civil rights action alleging sexual discrimination. The defendant is the City of Des Moines (the city), and the issues in the case relate to changes in personnel policies affecting pregnant employees in the Des Moines police department.

Plaintiff brought the present action pursuant to Iowa Code section 601A.16 (1989) after first filing a complaint with the Iowa Civil Rights Commission and obtaining a release to sue from that agency. The district court denied relief based on its finding that the city had a legitimate, nondiscriminatory, nonpretextual reason for changing the police department personnel policies affecting plaintiff during her pregnancy. After reviewing the record and considering the arguments presented on appeal, we affirm the district court.

In 1981 and early 1982, plaintiff was a uniformed street patrol officer. In March 1982, it came to the attention of the police department command staff that plaintiff was pregnant. Plaintiff's superiors requested a medical evaluation of her condition. After receiving a report from plaintiff's physician, it was agreed that plaintiff could continue to work at her regular patrol assignment as long as she was physically able to do so. Based on the evaluation of plaintiff's physician, it was estimated that this would continue until approximately May 15. However, on March 23, plaintiff requested that she be immediately placed on light-duty status. She presented a revised physician's statement indicating that patrol duty was no longer medically indicated for her state of pregnancy.

At the time plaintiff requested light duty, the police department had an informal, unwritten custom of permitting police officers, who were temporarily disabled for reasons unrelated to their employment, to be assigned "light duty" within the department while receiving regular officer's pay and benefits. Pursuant to this custom, plaintiff was placed on a light-duty assignment as a dispatcher on April 1. Plaintiff was allowed to retain her regular officer pay and benefits.

Later, a police captain contacted the personnel director of the city concerning the proper classification of plaintiff's disability status. The personnel director had not been aware of the informal police department custom regarding nonjob-related disability. He informed the captain that the current city-wide policy required city employees who were temporarily disabled for reasons unrelated to their employment to use sick leave. As a result, the police chief issued special order 82-6, to take effect on June 1, 1982, which provided that light-duty reassignment was available only to employees disabled because of work-related injury or illness.

Plaintiff was informed of special order 82-6 on May 24. She was told that, because her disability was not work related, she would be required in the future to use sick leave or vacation time. Notwithstanding the new policy directive, plaintiff was permitted to temporarily continue working at her dispatcher position because yet another change in personnel policy was being contemplated.

In early June, the city changed its disability policy to allow all city employees with a nonjob-related temporary disability to work in another position in their department if a position with a budgeted salary is temporarily vacant. The policy provides for the temporarily reassigned employees to receive the salary for the temporary positions rather than the salary for their regular positions. Pursuant to this policy, plaintiff was allowed to remain in the dispatcher position but received the salary of a dispatcher rather than a regular police officer.

From June 7 to June 20, plaintiff received $24.32 less than her regular salary scale. On June 21, dispatchers' salaries were increased and surpassed police officers' salaries by $7.01 biweekly. Plaintiff received the greater salary while working

as a dispatcher from June 7 to October 16, except for two weeks in September when the position was not available.

On October 16, plaintiff gave birth. The dispatcher position had enabled plaintiff to accumulate substantial overtime hours so that she expended less sick leave following the birth. In November, plaintiff returned to full duty as a patrol officer at her regular salary. Other facts relevant to the case will be considered in our discussion of the legal issues that have been presented.

## I. *Extent of Issues to be Considered.*

■ At the outset, we delineate the scope of the issues to be considered on this appeal. Although plaintiff's argument contains reference to multiple instances of sexual harassment by male police officers to which she testified at trial, only the personnel policies affecting her job assignment, salary, and sick leave during her pregnancy are issues for our decision. The other alleged instances of sexual harassment were presented by plaintiff to the civil rights commission, which determined that those claims were time barred. Whether that decision by the agency was correct or incorrect, it was final and binding on plaintiff unless overturned in a petition for judicial review filed pursuant to Iowa Code section 17A.19 (1989). Plaintiff did not seek judicial review of the agency's determination that her other sexual harassment claims were untimely, and thus, she may not complain of such matters in the present action.[1]

The district court adopted the position that we have taken vis-à-vis the unreviewed agency finding that plaintiff's other sexual harassment claims were untimely. That court considered evidence of the other matters, however, on the issue of discriminatory intent in the claims directed to the personnel policies. We consider this evidence for the same purpose. *See Lynch v. City of Des Moines,* 454 N.W.2d 827, 831–32 (Iowa 1990).

■ The case, having been tried at law in the district court, is reviewable on assigned error in this court. *Id.* at 829. The trial court's findings are binding on appeal if supported by substantial evidence. *Id.;* Iowa R.App.P. 14(f)(1). We are not, however, bound by the trial court's determinations of law nor are we precluded from inquiry into whether the trial court's ultimate conclusions were materially affected by an improper conclusion of law. *See Blunt, Ellis & Loewi v. Igram,* 319 N.W.2d 189, 192 (Iowa 1982).

## II. *The Issues Involving the Change in Personnel Policies.*

■ In seeking reversal of the district court's judgment, plaintiff urges that the changes that were initiated in the personnel policies of the police department affected pregnant employees in a disparate manner not permitted by the federal Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), or Iowa Code section 601A.6(1)(a). She contends that under these statutes no change in police department personnel policy could be made that resulted in less beneficial treatment for pregnant employees than the disability and sick leave policies previously applied to other police officers with disabilities unrelated to the job.

Plaintiff urges that the fact that the new policies did not work to her financial detriment was entirely fortuitous as a result of the vacancy in the higher paying dispatcher position continuing for some period of time. She urges that because this vacancy could have been filled at any time she suffered extreme emotional distress from the uncertainty of her employment status under the revised personnel policy. She also contends that the revised policy forced her to work overtime hours, beyond her physical limitations, in order to bank "comp time leave" as protection against an impending disability layoff.

The pertinent provision of the federal Pregnancy Disability Act, upon which plaintiff relies, reads as follows:

---

1. Our conclusion in this regard is buttressed by the language of § 601A.16(2), which states: "[a] release under this subsection shall not be issued if a finding of no probable cause has been made

on the complaint by the administrative law judge." We believe the same rationale applies to administrative findings that a claim is time barred.

The terms "because of sex" or "on the basis of sex" [for purposes of finding discrimination based on sex] include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work....

42 U.S.C. § 2000e(k).

■ For purposes of deciding plaintiff's claims, we glean two requirements from this federal legislation: (1) pregnant women who are able to work must be permitted to work on the same conditions as other employees; and (2) if pregnant women are not able to work for medical reasons, they must be accorded the same rights, leave privileges, and other benefits as other workers who are disabled from working to the same extent. This is the interpretation of the Pregnancy Disability Act adopted by the United States Court of Appeals in *Carney v. Martin Luther Home, Inc.*, 824 F.2d 643, 646 (8th Cir.1987), and which we choose to follow. The district court found the plaintiff's evidence failed to establish that either of these dual requirements were violated by the challenged personnel policies.

As a result of the district court's findings, the plaintiff may not prevail in this law action unless her evidence establishes her claims as a matter of law. *Davenport v. City of Des Moines*, 430 N.W.2d 405, 408 (Iowa 1988). Based on our review of the evidence, we are unable to conclude that she has established, as a matter of law, that the challenged personnel policies discriminate against her on the basis of sex or that they offend against the requirements of the federal Pregnancy Disability Act.

Plaintiff's evidence in no way suggests that, as a result of her pregnancy, she was not permitted to work on the same conditions as other employees during the time she was physically able to do so. The police department command staff readily accepted her claim, supported by a physician's statement, that she was able to work in her regular street patrol activity until approximately May 15, 1982. It was plaintiff who, on March 23, 1982, requested that she be placed on light-duty assignment immediately.

Plaintiff's evidence also fails to establish as a matter of law that, when she became unable to work at her regular assignment, she was not accorded the same rights, leave privileges, and other benefits available to male police officers who were disabled to the same extent. Upon documentation from her physician, plaintiff's light-duty request was honored in accordance with the then-prevailing police department personnel policy applicable to all disabilities unrelated to the job. Based on that policy, she was given a light-duty assignment within the department at her regular rate of pay. To the extent that the police department's light-duty policy was thereafter changed, first to require that sick leave be exhausted, and later to permit reassignment to fill existing vacancies, these new personnel policies accorded plaintiff the same rights as were available prospectively to all other city employees, male or female.

Plaintiff attempted to show the disparate nature of the new personnel policies by comparing her benefits under the new policies with benefits conferred on male police officers under the former policy. We find this comparison to be of little assistance in determining whether like situations are being treated disparately under the new policies. Whenever employers alter disability policies adversely to their employees, those employees who first feel the sting of the new policy will naturally suffer in comparison to the benefits available under the former disability policy.[2] The wisdom of the

---

**2.** In *Bunch v. Bullard*, 795 F.2d 384, 397–98 (5th Cir.1986), the court considered the claims of three black police officers who were the first to be denied promotion under a new personnel policy. In upholding this action, the court observed that, "[a]lthough the change in policy came at an inopportune time for some, we cannot conclude that promotions had to continue to the point of worsening an already poorly structured department."

personnel policies of the City of Des Moines is not for this court to determine. Whether plaintiff has a basis for objecting to the changes implemented in those policies is an issue of contract law not germane to this civil rights action.[3] On the civil rights issues that are presented, if, prospectively, all employees are treated the same under the new policy, we believe there has been no disparate treatment.

Plaintiff argues that the changes in the police department's light-duty policy were motivated by sexual bias on the part of some of the male command staff against a pregnant female police officer. Viewed in the light most favorable to plaintiff, her evidence shows that some members of the command staff were displeased that she was receiving the benefit of the former light-duty policy. The evidence reflects that a male commander may have inquired of the city personnel director concerning whether there was any sound policy ground for denying light duty to pregnant police officers. There is nothing in the record to suggest, however, that this inquiry was other than an attempt to have a neutral third party, *i.e.*, the city personnel director, settle this policy matter.

The personnel director testified at trial and stated that, after the inquiry was made to him concerning plaintiff's disability status, he advised the police department that its existing light-duty policy was not acceptable as to any cases of disability unrelated to the job, including pregnancy. The department was ordered by the personnel director to adapt its policy to the established city personnel policy requiring such employees to take sick leave. This was done in special order 82–6.

When the city policy was revised on June 7 so as to permit disabled employees to fill temporary vacancies at the salary level of the vacant position, that policy was also implemented by the police department. There is no indication that these new police department policies were not applied uniformly to all officers, male or female. Indeed, plaintiff's evidence at trial concerning alleged sexual harassment indicated the dissatisfaction of male police officers as to the manner in which the new policy was affecting them.

### III. *The Trial Court's Allocation of the Burden of Proof.*

■ As a final matter, we consider and reject plaintiff's claim that in denying her relief the district court applied an erroneous burden of proof. She contends that, because this is a case involving "direct" evidence of discrimination toward her as a pregnant female, the burden of proof is as stated in *Sennello v. Reserve Life Insurance Co.*, 667 F.Supp. 1498 (S.D.Fla.1987), *aff'd*, 872 F.2d 919 (11th Cir.1989):

> When direct evidence of discrimination has been introduced, the court must determine, as an initial matter, whether or not it believes the proffered evidence. If the factfinder credits the direct evidence, thereby concluding that a discriminatory intent existed, "a presumption is created that the unfavorable employment action was the product of discriminatory intent." This presumption, in turn, "may only be rebutted by a showing by the employer by a *preponderance* that the [adverse employment] action would have been taken in the absence of the discriminatory intent."

*Id.* at 1508 (quoting *Hill v. Seaboard Coast Line R.R.*, 767 F.2d 771, 775 (11th Cir. 1985)) (citations omitted).

Assuming that the burden of proof outlined in the *Sennello* case is to be adhered to, plaintiff is confronted with the fact that the trial court did not find, as an initial matter, that it believed her proffered evi-

---

**3.** Plaintiff argues that the policy recognized by the federal court in *Bunch* is not applicable to claims brought under the federal Pregnancy Disability Act. She contends that this legislation precludes any change in working conditions or disability benefits that provides less beneficial treatment for pregnant employees than the working conditions and disability bene-
fits *previously existing* for male employees with respect to disabilities unrelated to the job. This claim appears to echo the conclusion of the civil rights commission in its probable cause finding on this issue. We find no basis for reading such a sweeping prohibition against changing personnel policies into the federal statute.

dence. Her argument on the burden-of-proof issue also suffers from the fact that the district court found that, irrespective of any difference of opinion as to the burden of proof, the city, acting through its personnel department, had a legitimate, nondiscriminatory, nonpretextual reason for changing the police department personnel policies affecting plaintiff during her pregnancy.

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

AFFIRMED.