**Steven J. HERMELING, Plaintiff,**

v.

**MINNESOTA FIRE & CASUALTY COMPANY, f/k/a Minnesota Mutual Fire & Casualty Company, Defendant and Third-Party Plaintiff, Appellant,**

v.

**Roschelle Johnson LESSARD, et al., Respondents.**

No. C4–95–376.

Supreme Court of Minnesota.

May 30, 1996.

Daniel J. Trudeau, King & Hatch, P.A., St. Paul, for MN Fire & Cas.

Richard J. Sheehan, Harvey, Sheehan & Benson, Minneapolis, for Hermeling.

George C. Hottinger, John R. Thomas, Erstad & Riemer, P.A., Minneapolis, for Lessard and Johnson.

## OPINION

ANDERSON, Justice.

This appeal raises the question whether, in a subrogation action by an underinsured motorist insurance carrier, the statute of limitations begins to run on the date of the accident or on the date the carrier substitutes its check for a check offered in settlement by the tortfeasor's insurance carrier. In this case, the action by the underinsured motorist insurance carrier was commenced more than six years from the date of the accident, but within six years of the date the check was substituted. The district court, in granting summary judgment, concluded that the statute of limitations begins to run on the date of the accident, not the date the check was substituted, and the Minnesota Court of Appeals affirmed. We affirm.

The facts in this case are not in dispute. On March 22, 1988, Steven J. Hermeling was injured when the vehicle in which he was a passenger was struck from behind by a vehicle operated by respondent Roschelle Johnson Lessard and owned by Lessard's father, respondent Warren E. Johnson. At the time of the accident, Hermeling was a passenger in a vehicle owned and operated by Randy R. Nelson. Hermeling was an employee of Nelson and was insured by Nelson's insurer, Minnesota Fire & Casualty Company. Johnson's vehicle was insured by American States Insurance Company.

In June 1989, American States, on behalf of Johnson and Lessard, made an offer of settlement to Hermeling in the amount of $30,000, the policy limit. In exchange, American States required Hermeling's full, final and complete release of all his claims against Johnson and Lessard. The $30,000 was insufficient to cover Hermeling's injuries. On July 13, 1989, pursuant to *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983), Minnesota Fire substituted its own check in the amount of $30,000 to Hermeling in place of American States' check in order to preserve its subrogation rights against Johnson and Lessard. Hermeling accepted and cashed Minnesota Fire's check, and Minnesota Fire returned American States' uncashed check. Subsequently, on March 2, 1994, Hermeling commenced an action against Minnesota Fire for underinsured motorist benefits. Minnesota Fire answered Hermeling's complaint and commenced a third-party action against Johnson and Lessard, alleging negligence and seeking to recover Hermeling's remaining damages. Minnesota Fire's third-party complaint is dated March 31, 1994.

Johnson and Lessard moved for summary judgment against Minnesota Fire, asserting that Minnesota Fire's claims against them were barred by the six-year statute of limitations for negligence actions. Minn.Stat. § 541.05, subd. 1(5). The six-year statute of limitations, if calculated from the date of the accident, expired on March 22, 1994, several days before Minnesota Fire commenced its action. Minnesota Fire opposed the motion on the grounds that its subrogation right did not accrue and was not actionable until payment was made on underinsured motorist coverage. It argues that this payment did not occur until it substituted its check for American States' check on July 13, 1989, and therefore the statute of limitations could not begin to run until July 13, 1989. The district court granted summary judgment in favor of Johnson and Lessard, and Minnesota Fire appealed. The court of appeals affirmed, holding that Minnesota Fire's claim was barred by the statute of limitations. On appeal, Minnesota Fire asserts that in a subrogation action, the statute of limitations begins to run on the date an underinsured

motorist insurance carrier makes payment of benefits or substitutes its check for that of the tortfeasor. Alternatively, it asserts that if the court should conclude that the statute of limitations begins to run on the date of the accident, the limitations period is extended by the 30–day notice period required in *Schmidt.*

## I.

█ Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to judgment as a matter of law." Minn.R.Civ.P. 56.03. On appeal from summary judgment, the role of the reviewing court is to review the record for the purpose of answering two questions: (1) whether there are any genuine issues of material fact to be determined, and (2) whether the district court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). There are no genuine issues of material fact in dispute in this appeal; therefore, we proceed to a determination of whether the district court erred in its application of the law.

█ Underinsured motorist insurance is governed by Minnesota Statutes section 65B.49. A vehicle is "underinsured" when it has liability coverage less than the amount necessary "to compensate the insured for actual damages." *See* Minn.Stat. § 65B.43,

subd. 17 (1994); *Costello v. Aetna Casualty & Surety Co.,* 472 N.W.2d 324, 326 (Minn. 1991). An underinsurer which pays benefits to its insured has subrogation rights and may sue to recover the benefits it pays from the tortfeasor whose negligence or wrongdoing caused the loss. *See Great Northern Oil Co. v. St. Paul Fire & Marine Ins. Co.,* 291 Minn. 97, 99, 189 N.W.2d 404, 406 (1971).

█ At the outset, we note that the parties do not dispute that this is an action in subrogation, not one in indemnity or in contribution.[1] Subrogation has been defined as: "the right of the insurer to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss paid by the insurer." 16 George J. Couch, *Couch Cyclopedia of Insurance Law* § 61:1 (2d ed. 1983). A subrogee has no greater rights than those of the subrogor. *Travelers Indemn. Co. v. Vaccari,* 310 Minn. 97, 102, 245 N.W.2d 844, 847 (1976). The subrogee merely steps into the shoes of the subrogor. *Employers Liability Assur. Corp. v. Morse,* 261 Minn. 259, 263, 111 N.W.2d 620, 624 (1961). The claim of a subrogee is derivative of the claim of the subrogor, and only changes the ownership of the claim. The subrogee gains only the right to prosecute against third parties whatever rights the subrogor possesses against them. *See* 16 George J. Couch, *Couch Cyclopedia of Insurance Law* § 61:36 (2d ed. 1983). The right of subrogation remains inchoate until such time as the subro-

---

1. "Indemnity and contribution are both remedies based on equitable principles to secure restitution to one who has paid more than his just share of a liability." *White v. Johnson,* 272 Minn. 363, 367, 137 N.W.2d 674, 677 (1965). They contemplate different measures of recovery, for indemnity secures entire reimbursement and contribution allows one to recover a proportionate share from the other liable party. *Id.; Hendrickson v. Minnesota Power & Light Co.,* 258 Minn. 368, 371, 104 N.W.2d 843, 846–47 (1960), *overruled in part by Tolbert v. Gerber Indus., Inc.,* 255 N.W.2d 362, 368 n. 11 (1977). Contribution is the appropriate remedy where there is common liability among tortfeasors, and a claim for contribution does not accrue until the person entitled to the contribution has sustained damage by paying more than his fair share of the obligation. *Grothe v. Shaffer,* 305 Minn. 17, 232 N.W.2d 227, 232 (1975). Indemnity does not require common liability, but arises out of a contractual

relationship, either express or implied by law, which requires one party to reimburse the other entirely. *Hendrickson,* 258 Minn. at 371, 104 N.W.2d at 847.

Under the common law, an indemnity claim by an insurer accrues when the party seeking indemnification has made payment to the injured person. *Metropolitan Property & Casualty Ins. Co. v. Metropolitan Transit Comm'n,* 538 N.W.2d 692, 696 (Minn.1995).

A claim for contribution or indemnity does not accrue, and the statute of limitations does not start to run on the claim, at the time of the commission of the tort, but at the time of the payment of the underlying claim. *See Metropolitan Property & Casualty,* 538 N.W.2d at 696; Jane M. Draper, Annotation, *When Does Statute of Limitations Begin to Run Upon an Action by Subrogated Insurer Against Third–Party Tortfeasor?,* 91 A.L.R.3d 844, 847 § 2 (1979).

gee makes a payment. *State Farm Mutual Auto. Ins. Co. v. Galloway,* 373 N.W.2d 301, 305 (Minn.1985). The cause of action in subrogation therefore accrues prior to payment, but is not ripe for adjudication until payment is made by the subrogee. *See id.*

■ The application of a statute of limitations in a subrogation action is different from that for an action in indemnity or contribution. *See Metropolitan Property and Casualty Ins. Co. v. Metropolitan Transit Comm'n,* 538 N.W.2d 692 (Minn.1995). The question of when the statute of limitations begins to run in a claim in subrogation by an underinsured motorist insurance carrier against a tortfeasor is one of first impression in Minnesota. The statute of limitations at issue here is the six-year statute of limitations for negligence actions. Minn.Stat. § 541.05, subd. 1(5) (1994). This statute provides:

> Except where the uniform commercial code otherwise prescribes, the following actions shall be commenced within six years:
>
> \* \* \*
>
> (5) For criminal conversation, or for any other injury to the person or rights of another, not arising on contract \* \* \*.

We have held that the statute of limitations for negligence actions begins to run from the date of the accident causing the injury. *American Mutual Liab. Ins. Co. v. Reed Cleaners,* 265 Minn. 503, 506, 122 N.W.2d 178, 180 (1963). However, Minnesota Fire argues that a different standard should apply to subrogation actions. The court of appeals disagreed, and concluded that the statute of limitations on Minnesota Fire's cause of action in subrogation began to run on the date of the accident that caused Hermeling's injury. Accordingly, the court of appeals held that Minnesota Fire's action was barred because more than six years from the date of Hermeling's injury had passed before Minnesota Fire's action in subrogation was commenced.

Regarding this question, Couch comments that the statute of limitations for a subrogation action begins to run at the same time for the subrogor as it would have for the insured party:

> Since the insurer's claim by subrogation is derivative from that of the insured, it is subject to the same statute of limitations as though the cause of action were sued upon by the insured. Consequently, the insurer's action is barred if it sues after expiration of the period allowed for the suing out of tort claims.

16 George J. Couch, *Couch Cyclopedia of Insurance Law* § 61:234 (2d ed. 1983).

The Mississippi Supreme Court addressed this precise question and held the contention that the statute of limitations does not begin to run until a subrogated insurer makes payments is without merit. The court noted:

> While a subrogated insurer frequently contends that its action against the third-party tortfeasor who allegedly caused the damage or injury for which the insurer had to recompense its insured did not accrue, and the statute of limitations did not begin to run thereon, until the insurer had made the payments required under its insurance contract, courts have held, generally that such a contention was without merit.

*Indiana Lumbermen's Mutual Ins. Co. v. Curtis Mathes Mfg. Co.,* 456 So.2d 750, 754 (Miss.1984) (quoting Jane M. Draper, Annotation, *When Does Statute of Limitations Begin to Run Upon an Action by Subrogated Insurer Against Third–Party Tortfeasor?*, 91 A.L.R.3d 844, 847 § 2 (1979)). In *Indiana Lumbermen's,* the court held that the statute of limitations began to run against an insurer's claim on the date of the accident causing the injury. The fact that the insurer later became subrogated to the rights of the insureds did not operate to extend the period within which suit could be brought because the insurer was substituted in the place of the insureds and succeeded to their rights and remedies. *Indiana Lumbermen's,* 456 So.2d at 754–55.

More recently, the Montana Supreme Court addressed this question, concluding that, because the subrogation insurer stands in the same position as the subrogor, the statute of limitations begins to run on the date of the accident, and the right to subrogation does not operate to extend the statute

of limitations. *St. Paul Fire & Marine Ins. Co. v. Glassing,* 269 Mont. 76, 887 P.2d 218, 220–21 (1994).

Minnesota Fire cites our decision in *Schmidt* for the proposition that the right of subrogation "comes into existence only after the insurer has paid benefits to its insured." 338 N.W.2d at 261. Minnesota Fire also cites *Great Northern Oil Co.* for the proposition that an insurer's right of subrogation arises only on payment of benefits. 291 Minn. at 99, 189 N.W.2d at 406. It asserts that the court of appeals' position is contrary to the *Schmidt* decision. However, Minnesota Fire mischaracterizes the holding of this court in *Schmidt.* In *Schmidt,* we held that an underinsurer is entitled to 30 days notice of a tentative settlement as a reasonable time period to protect its potential subrogation rights by substituting its check for the offered settlement or by paying underinsurance benefits before release. *Schmidt,* 338 N.W.2d at 263. *Schmidt* does not determine when the statute of limitations begins to run on an underinsured motorist action. *Schmidt* and *Great Northern* address when the *right* to sue comes into existence, not when the statute of limitations begins to run on a cause of action. As we stated in *Galloway,* the right of subrogation remains inchoate until such time as the subrogee makes a payment. 373 N.W.2d at 305.

We conclude that Minnesota Fire's cause of action in subrogation accrued at the time of the accident causing the injury, but was not ripe for adjudication until payment was made by substitution of its check for the settlement check of American States. An action in subrogation is subject to the same statute of limitations as though the action were sued upon by the insured. Minnesota Fire "stepped into the shoes" of Hermeling who was entitled to bring an action on the date of the accident, March 22, 1988, and for six years thereafter. Minnesota Fire's third-party complaint is dated March 31, 1994, more than six years from the date of the accident causing Hermeling's injury. Because the statute of limitations on Hermeling's cause of action began to run on the date of the accident causing his injury, the statute of limitations on Minnesota Fire's action in subrogation began to run on the same date. Therefore, Minnesota Fire's action is barred because the six-year statute of limitations under section 541.05, subd. 1(5) expired prior to the commencement of the action.

## II.

■ Having concluded that the statute of limitations begins to run on the date of the accident causing the injury, we turn to the second issue raised by Minnesota Fire— whether the limitations period should be extended by the 30–day notice period required by *Schmidt.* In *Schmidt,* this court set forth the notice requirement that permits an underinsurer to protect its subrogation interest in the event the insured enters a settlement with the tortfeasor's insurance carrier. Before settling a liability claim against an underinsured tortfeasor, the injured party must give notice of the proposed settlement to the underinsured motorist insurance carrier. The underinsured motorist insurance carrier has 30 days to substitute its check for that of the tortfeasor's insurance carrier. If the underinsured motorist insurance carrier does not substitute its check, then the underinsured motorist insurance carrier loses its subrogation rights. *Schmidt,* 338 N.W.2d at 263; *American Family Mut. Ins. Co. v. Baumann,* 459 N.W.2d 923, 925 (Minn.1990).

Minnesota Fire asks this court to extend the limitations period to six years plus 30 days to allow notice under *Schmidt* to be given on the last day of the six-year limitations period and still provide the underinsured motorist insurance carrier with an additional 30–day period during which to evaluate the claim and determine whether to substitute its check.[2] The court of ap-

---

**2.** The respondents note that in this case Minnesota Fire actually had 20 days, the period between the commencement of Hermeling's action on March 2 and the expiration of the six-year statute of limitations on March 22, to bring its action, and Minnesota Fire simply did not do so. There was some discussion between the parties about exactly when Hermeling commenced his action against Minnesota Fire, February 28, 1994, or March 2, 1994. The district court, apparently erroneously, found that Hermeling's action against Minnesota Fire commenced on February 28, 1994. However, the parties stipulated that Acknowledgement of Service by Mail for this

peals concluded that *Schmidt,* while granting a 30–day notice period to underinsured motorist insurance carriers for the purpose of evaluating whether to preserve their subrogation rights by substituting their own check for a settlement offer, does not extend the period for bringing subrogation actions beyond the six-year statutory period. We agree.

Statutes of limitations are within the legislative domain, and "[c]ourts have no authority to extend or modify statutory limitation periods." *Johnson v. Winthrop Lab. Div. of Sterling Drugs, Inc.,* 291 Minn. 145, 151, 190 N.W.2d 77, 81 (1971). The court in *Johnson* further stated:

> Chapter 541 [governing limitation of actions] itself sets forth specific conduct or circumstances which will toll the running of the limitation periods. [Except currently for cases of sexual abuse] [t]he legislature has not seen fit to provide a statutory tolling period to protect plaintiffs from their own ignorance, although we held many years ago that such ignorance does not toll statutes of limitations.

*Id.* The legislature has not specifically extended the limitation period for claims against underinsured tortfeasors to provide that notice to an underinsured motorist insurance carrier within 30 days of the end of the six-year period extends the limitation period to the notice date plus 30 days. In the absence of legislative action granting an extension, courts do not have authority to extend a statute of limitations. *Id.*

Moreover, while a *Schmidt* notice operates to give notice to the underinsured motorist insurance carrier of its impending liability, even unawareness or ignorance of a cause of action may not necessarily suspend the running of the statute of limitations. In general, in the absence of fraud, ignorance of the existence of a cause of action does not prevent the running of the statute of limitations. *O'Neill v. Illinois Farmers Ins. Co.,* 381 N.W.2d 439, 440 n. 1 (Minn.1986). In holding that the statute of limitations begins on the date of an automobile accident causing the claimant's injury for an action seeking

underinsured motorist benefits, this court stated that "[a] claimant's unawareness or ignorance of a cause of action does not, absent fraud, toll the statute of limitations." *Id.* (citing *Dalton v. Dow Chem. Co.,* 280 Minn. 147, 153, 158 N.W.2d 580, 584 (1968)).

We conclude that the 30–day notice of proposed settlement by an underinsured required by *Schmidt v. Clothier* does not operate to extend the six-year statute of limitations in a negligence action.

### III.

Minnesota Fire also asserts that since subrogation rights depend on general principles of equity, a balancing of the equities of this case dictates that this court should determine that the statute of limitations begins to run on the date the underinsurer pays benefits. In *Schmidt,* this court stated that "the equities to be balanced are those between the underinsurer, which has paid benefits, and the underinsured tortfeasor, who has not paid for the damages he or she has caused." *Schmidt,* 338 N.W.2d at 262. Minnesota Fire could have brought an action any time after July 13, 1989, the date it substituted its check for American States', until March 22, 1994, when the six-year statute of limitations expired. Furthermore, Minnesota Fire had 20 days after Hermeling commenced an action against it on March 2, 1994, to file a third-party complaint against the Johnsons, and it did not do so. The equities do not favor Minnesota Fire in this case.

Affirmed.

---

action was dated March 2, 1994 and was proper-

ly part of the record on appeal.