# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 98-1718

———————

Vicki L. Ince, et al., on behalf of       *
themselves and all persons similarly     *
situated,                                    *
                                             *

      Plaintiffs - Appellants,        *

                                             *    Appeal from the United States
      v.                               *    District Court for the
                                             *    District of Minnesota.

Aetna Health Management, Inc.;       *
HealthPartners, Inc.; MedCenters     *
Health Care, Inc.,                       *
                                             *

      Defendants - Appellees.       *

———————

Submitted:  November 20, 1998

Filed:  April 9, 1999

———————

Before BOWMAN, Chief Judge, LOKEN, Circuit Judge, and HAND,[*] District Judge.

———————

LOKEN, Circuit Judge.

This dispute concerns the manner in which a health maintenance organization asserted subrogation claims for health benefits provided to members who later recovered from third-party tortfeasors.  MedCenters Health Care, Inc., is a health

———————

[*]The HONORABLE WILLIAM BREVARD HAND, United States District Judge for the Southern District of Alabama, sitting by designation.

maintenance organization ("HMO") licensed by the Minnesota Commissioner of Health.  See Minn. Stat. § 62D.04.  MedCenters contracts with Minnesota employers to provide comprehensive medical care for their employees.  In most cases, the result is an employee welfare benefit plan governed by ERISA, 29 U.S.C. §§ 1001 *et seq.*  Aetna Health Management, Inc. ("Aetna"), administers these MedCenters Plans.

MedCenters charges a fixed monthly fee for each employee enrolled in its Plan.  MedCenters contracts with a network of health care providers to provide Plan benefits to enrolled members.  At the time in question, MedCenters did not compensate its primary care physicians under the traditional fee-for-service method, but rather paid them fixed sums, called "capitated" payments, for each member who enrolled in their clinics.  MedCenters paid other providers, such as physician specialists and hospitals, on a fee-for-service basis at negotiated, usually discounted rates.  The MedCenters Plans include "Subrogation" provisions declaring that, when an enrolled member suffers injury at the hands of a third-party tortfeasor, the Plan has a primary right to recover "the reasonable value of services and benefits provided."  In asserting Plan rights under this provision, MedCenters and Aetna based Plan claims on the providers' published fee-for-service charges, without disclosing whether MedCenters had paid the providers less because of capitated payments or substantially discounted fee-for-service rates.  (According to MedCenters, it passes on to the medical providers any "extra" amounts recovered.)

Plaintiffs are a purported class of MedCenters Plan members who sued MedCenters, its parent company, and Aetna alleging violations of ERISA and state law.  Before commencing this action, each plaintiff suffered an injury, received health benefits under the Plan, recovered medical expenses and other damages from a third-party tortfeasor, and then settled a subrogation claim asserted by Aetna on behalf of

-2-

MedCenters. In a series of orders, the district court[1] granted summary judgment dismissing all of plaintiffs' claims prior to class certification. On appeal, plaintiffs argue that Aetna and MedCenters breached ERISA fiduciary duties and the terms of the MedCenters Plans by asserting secretly inflated subrogation claims that exceeded the costs of the Plan benefits provided. Reviewing the grant of summary judgment *de novo*, we affirm. See Crown v. Union Pacific R.R., 162 F.3d 984, 985 (8th Cir. 1998) (standard of review).

**1. Are Defendants ERISA Fiduciaries?** To establish a breach of fiduciary duty, plaintiffs must prove that MedCenters and Aetna are ERISA fiduciaries. ERISA provides that each written plan should identify "one or more named fiduciaries." 29 U.S.C. § 1102(a)(1). Beyond that, ERISA takes a functional approach to defining fiduciaries. Any person is an ERISA plan fiduciary -

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. §1002(21)(A). The record includes a number of MedCenters Plans or policies issued to individual employers. These documents do not appear to name any ERISA fiduciaries. Presumptively the employer is the Plan sponsor. See 29 U.S.C. § 1002(16)(B). But MedCenters is given a great deal of discretionary authority to manage and administer the Plans. Therefore, for summary judgment purposes, we assume that MedCenters is an ERISA fiduciary when exercising such discretion, an issue the district court did not reach.

---

[1]The HONORABLE ANN D. MONTGOMERY, United States District Judge for the District of Minnesota.

The district court concluded that Aetna was *not* an ERISA fiduciary when asserting, negotiating, and collecting subrogation claims on behalf of the MedCenters Plans because "Aetna's control remained at the level of administering subrogation claims and did not rise to control or discretion over the plan's terms or the procedures outlined in the plan." Plaintiffs argue summary judgment was improper on this issue because there is evidence Aetna exercised discretionary authority over Plan assets -- the subrogation liens -- and over management of the Plans' subrogation function.

In general, we agree with the district court. Plaintiffs stipulated that Aetna performed claim processing services for MedCenters, including "subrogation recovery services." The processing of claims is the kind of "purely ministerial function" that does not give rise to fiduciary duties when performed by a third party on a contract basis. See 29 C.F.R. § 2509.75-8 D-2. The contract between MedCenters and Aetna expressly provides that Aetna's broad administrative responsibilities are subject to approval and control by the MedCenters Board of Directors. In addition, we question plaintiffs' contention that Aetna's processing of subrogation claims is control over "plan assets" as contemplated by ERISA. The Plans provide that any subrogation moneys Aetna does collect must be deposited "in accounts established in [MedCenters's] name with banks . . . determined by [MedCenters]." See Collins v. Pension & Ins. Committee, 144 F.3d 1279, 1282 (9th Cir. 1998).

We are nonetheless wary of affirming summary judgment in favor of Aetna on this ground. ERISA imposes some fiduciary duties on those who implement a plan's claims procedures. See 29 C.F.R. § 2560.503-1; compare Prudential Ins. Co. v. Doe, 140 F.3d 785 (8th Cir. 1998), with Kerns v. Benefit Trust Life Ins. Co., 992 F.2d 214, 216 (8th Cir. 1993). Given the evidence of Aetna's substantial control over the administration of the MedCenters Plans, including evidence that MedCenters has a Board of Directors but no operational employees, the bare contractual recitals that Aetna acts only under the control of MedCenters may not be sufficient to refute, as

-4-

a matter of law, a specific allegation that Aetna exercised discretionary authority with respect to an aspect of the Plan.  See Martin v. Feilen, 965 F.2d 660, 669 (8th Cir. 1992), cert. denied, 506 U.S. 1054 (1993).  Therefore, we will examine plaintiffs' breach of fiduciary claims without foreclosing the possibility that Aetna as well as MedCenters may be responsible for any breaches.

**2.  The Alleged Breaches of Fiduciary Duty.**  "Borrowing from trust law, ERISA imposes high standards of fiduciary duty upon those responsible for administering an ERISA plan and investing and disposing of its assets."  Martin v. Feilen, 965 F.2d at 664; see 29 U.S.C. §§ 1104-06, 1109.  Plaintiffs argue defendants breached these fiduciary duties by failing to disclose that they were asserting subrogation claims for greater amounts than the Plans in fact paid for the medical services provided.  Plaintiffs rely heavily on Shea v. Esensten, 107 F.3d 625 (8th Cir.), cert. denied, 118 S. Ct. 297 (1997).  In Shea, we held that an HMO breached its ERISA fiduciary duty by failing to disclose that its provider agreements gave physicians a financial incentive not to refer patients to specialists.  Thus, Shea involved a breach of the plan administrator's duty to publish an accurate description of plan benefits to participants and beneficiaries.  See 29 C.F.R. § 2520.102-3(j)(2).

There was no comparable failure to disclose in this case.  The Plan's right to assert subrogation claims need not be disclosed in its summary plan description.  See 29 U.S.C. § 1022(b); 29 C.F.R. § 2520.102-3.  The provision in the MedCenters Plans defining the subrogation interest as extending "to the extent of the reasonable value of services and benefits provided" accurately described that the Plan was entitled to recover the fair value of the services rendered and was not limited to a recovery for cash expenditures.  Minnesota law has long provided that an injured party may recover from a tortfeasor the "reasonable value" of medical services received, even if the injured party acquired the services for less.  See Dahlin v. Kron, 45 N.W.2d 833, 837-38 (Minn. 1950).  MedCenters as subrogee may "step into the shoes" of the injured party's right to recover the reasonable value of medical services the Plan

-5-

provided. See Hermeling v. Minnesota Fire & Cas. Co., 548 N.W.2d 270, 273 (Minn. 1996). Minnesota Department of Health regulations expressly permit an HMO to require "an enrollee to reimburse it for the *reasonable value* of health maintenance services provided . . . to the extent the enrollee collects damages . . . for the diagnosis, care, and treatment of an injury." Minn. R. 4685.0900 (emphasis added). Thus, the MedCenters plan documents accurately described a lawful method of calculating and asserting subrogation claims. Assuming defendants were the fiduciaries responsible for these disclosures, there was no breach of fiduciary duty.

Plaintiffs also argue that defendants breached ERISA fiduciary duties because Aetna's claims personnel occasionally sent subrogation notices describing the Plan's subrogation interest as being based upon "HMO paid" rather than the reasonable value of provider services. Plaintiffs contend this misrepresentation led them to believe MedCenters made cash expenditures of the listed amounts. This contention is fatally flawed. First, plaintiffs have no authority for the proposition that ERISA fiduciary duties apply to this kind of communication between the Plan and a beneficiary who has a contractual obligation to reimburse the Plan for benefits provided. The Department of Labor's regulation prescribing claims procedures imposes no such duty. See 29 C.F.R. § 2560.503-1. Second, even assuming that a fraudulent misrepresentation by the Plan in pursuing its right to subrogation is somehow actionable under ERISA, plaintiffs have no evidence of materiality, detrimental reliance, or damage to support such a claim. Plaintiffs incorporated the allegedly "inflated" subrogation claims into their settlement demands in the underlying tort actions, which may well have increased their recovery from the tortfeasors. With one exception, plaintiffs settled the Plans' subrogation claims for less than the amounts Aetna originally asserted, indeed, for less than plaintiffs' calculation of MedCenters's out-of-pocket payments to providers.

**3. Did Defendants Breach the Terms of the Plan?** Plaintiffs further argue the district court erred in dismissing their claims that MedCenters and Aetna breached

the Plans by asserting and collecting subrogation claims for more than the Plans in fact paid providers. As we have explained, defendants' methodology in calculating subrogation claims was consistent with the Plans because the well-established meaning of the term "reasonable value" in the Plan subrogation provisions is the medical providers' normal charges for the services provided. Of course, there is always a potential question whether the amount demanded in subrogation was in fact the reasonable value of the medical services actually provided. If plaintiffs raised that issue in the district court, which is not at all clear, they presented no evidence to counter defendants' evidence that every subrogation claim was based upon provider billings at the providers' normal fees for such services. In their reply brief, plaintiffs point to a Wall Street Journal article to argue that "in Minnesota, discounts are the norm." But this falls far short of evidence that any of the subrogation claims in question were based upon illegitimate provider billings. See Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1328-29 (8th Cir. 1995). A party opposing summary judgment who will bear the burden of proof at trial must come forward with evidence substantiating his position to avoid summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

**4. The Non-ERISA Plaintiff.** One plaintiff worked for a public high school, and its MedCenters Plan was therefore not governed by ERISA. See 29 U.S.C. § 1003(b)(1). The district court granted summary judgment dismissing his state law claims because "a factfinder cannot conclude, beyond mere speculation, that Defendants impacted the settlement negotiation process in a way that harmed Plaintiff." After careful review of the record, we agree. In addition, on appeal plaintiffs have not separately argued their state law claims, which leads us to conclude that our analysis

of their breach of fiduciary duty and breach of contract claims under ERISA applies with equal force to their state law claims.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.